# PETITION OF JOSEPH P. SPLANE.

FOR A MANDAMUS TO THE ORPHANS' COURT OF ALLEGHENY COUNTY.

Argued January 12, 1889—Decided January 21, 1889.

1. The certificate of the " presiding judge of the county from whence he came, setting forth that he is of reputable professional standing," etc., to be filed by an attorney with the certificate of his admission to the Supreme Court, to entitle him to be admitted on motion to practice in " any other court of the commonwealth," under the act of May 7, 1885, P. L. 16, as amended by the act of May 19, 1887, P. L. 131, must be the certificate of the judge of the county where the applicant last practiced as a resident attorney.

2. Moreover, as the question whether an attorney shall be admitted to practice by a court of record or not, is a judicial and not a legislative question, the said act of 1887 is an encroachment upon the judicial department of the government, as unwise as it is illegal, and such admission will not be enforced by this court by mandamus.

3. An applicant for admission to the bar was twice rejected by the board of examiners of Allegheny county, was subsequently admitted to practice in the courts of Cambria county, and in the Supreme Court, and then applied for admission in the Orphans' Court of Allegheny county, on motion, under the act of 1887, referred to; his certificate from the presiding judge of Cambria county not showing that he was a resident practicing attorney of Cambria county, the motion was overruled, when he petitioned the Supreme Court for a writ of mandamus; Refused.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 000 October Term 1889, Sup. Ct.

On December 7, 1888, the petition of Joseph P. Splane was presented to this court setting forth, in substance, to wit:

That he was a member of the bar of Cambria county, duly admitted and in good and regular standing; that he was a member of the bar of the Supreme Court, also, in good and regular standing; that by virtue of the act of May 7, 1885, P. L. 16, and the amendatory act of May 19, 1887, P. L. 131, upon motion and the presentation of his certificate of admission to the Supreme Court and filing a certificate of the president judge of the courts of Cambria county, setting forth that he was of reputable professional standing and unobjectionable character, the petitioner was entitled to admission to any of the courts of this commonwealth, on motion.

That upon motion and filing of such certificates, the petitioner had been admitted to practice law in the Courts of Common Pleas Nos. 1 and 2 of the county of Allegheny.

That on November 21, A. D. 1888, the petitioner presented himself in the Orphans' Court of the county of Allegheny, state of Pennsylvania; the said court being then open and the president judge, Hon. W. G. Hawkins, Jr., and associate judge Hon. J. W. Over, being present, the following motion was made in writing:

" And now, to wit, November 21, 1888, comes A. J Barton,

Statement of Facts.

an attorney in good standing at this bar, and moves the court that Joseph P. Splane be admitted to practice law in this court, in accordance with the act of assembly of the commonwealth of Pennsylvania, approved the 7th day of May, A. D. 1885, entitled 'An act to further regulate the admission of attorneys and counsellors at law to practice in the several courts of this commonwealth,' and the supplement thereto, approved the 19th day of May, A. D. 1887, amending the first section thereof; and herewith presents a certificate of the prothonotary of the Supreme Court, for the western district of Pennsylvania, certifying that said Joseph P. Splane is an attorney of said court, and herewith asks leave to file a certificate of the honorable Robert L. Johnston, president judge of the courts of Cambria county, 47th judicial district of Pennsylvania, setting forth that the said Joseph P. Splane is a member of the bar of Cambria county, is of reputable professional standing and of unobjectionable character.          A. J. BARTON."

That attached to and filed with said motion was the certificate of the president judge of the 47th judicial district of Pennsylvania, and authentification of his signature, a true and correct copy of which is attached hereto and made part of this petition.

That a certificate of J. Bowman Sweitzer, Esq., prothonotary of the western district of your Honorable Court, was presented to the said Orphans' Court of Allegheny county at the time said motion was made, a true and correct copy of which is hereto attached and made part of this petition.

That the said court refused to admit your petitioner to practice law, and that by reason of said refusal your petitioner is deprived of his legal rights in the premises.

Your petitioner therefore prays that a mandamus may be issued to the said W. G. Hawkins and J. W. Over, judges of the Orphans' Court in and for the county of Allegheny, state of Pennsylvania, commanding them to admit the said Joseph P. Splane to practice law in said court, or that a rule on the said W. G. Hawkins and J. W. Over, judges aforesaid, may be granted to show cause why a mandamus should not be issued for the purposes aforesaid.

And your petitioner will ever pray, etc.

### Statement of Facts.

On the filing of the foregoing petition, a rule was granted to show cause why the writ of mandamus should not issue as prayed for; returnable to January 12, 1889.

On January 12, 1889, the rule having been served, William G. Hawkins, Jr., president, and J. W. Over, associate judge, of the separate Orphans' Court of Allegheny county, filed an answer, admitting that the counsel for the petitioner, on November 21, 1888, had moved in writing for the admission of the petitioner to the bar of the said court and that said motion had been by the said court refused, but averring that said action had been taken in certain proceedings instituted by the petitioner in said court to No. 284 September Term 1888, which being duly certified and returned, the respondents prayed to be taken as part of their answer; and that upon said proceedings the court had filed a decision which was as follows, to wit:

### EX PARTE JOSEPH P. SPLANE.

HAWKINS, P. J.

### STATEMENT.

The question involved in this proceeding is whether or not Joseph P. Splane is entitled to admission to the bar of this court and the material facts are these:

On October 20, 1888, Mr. A. J. Barton presented a petition on behalf of Mr. Splane setting forth that said Splane was a member of the bar of Cambria county and of the Supreme Court of Pennsylvania, in good and regular standing; that certificates thereof were on file in the office of the prothonotary of Court of Common Pleas No. 1 of Allegheny county; that by virtue of the act of May 19, 1887, he was entitled to admission to the bar of this court upon presentation of said certificates; that the board of examiners of this court refused to move his admission, because admission under said act was not within the scope of their duties; and that this court required all motions for admission to be made by a member of said board; and thereupon asking that a citation be awarded to said board to show cause why one of its members should not be designated to move such admission.

Inquiry at the prothonotary's office of Court of Common Pleas No. 1 of Allegheny county, on November 13, 1888, disclosed the fact that no such certificates as those referred to

in said petition had been filed there; but on the same day Mr. Barton handed this court two certificates with no mark of filing thereon, as being those to which reference had been made. One of these shows Mr. Splane's admission to practice in the Supreme Court on October 8, 1888; the other purports to have been signed by R. L. Johnston, president judge, 47th district, October 9, 1888, and represents that "Joseph P. Splane, a member of the Cambria county bar, is a gentleman of reputable professional standing and of unobjectionable character," but it is not attested by the seal of that court, and does not show when Mr. Splane was admitted.

The board of examiners, in their answers, say that in their opinion neither the act of 1887, nor their appointment, contemplated that motions for admission in cases like the present should be made by them. Mr. Schoyer, a member of the board, in a separate answer, said that in 1887 Mr. Splane had appeared before the board of examiners for examination for admission to this bar, and after examination had, the said board failed to find him sufficiently qualified for admission to the bar; that, "as he is advised and believes, said petitioner had submitted himself for examination on two previous occasions to a preceding committee and on both occasions failed to pass the examinations to which he was subjected;" and that "subsequently said petitioner procured admission to the Cambria county bar, and upon that certificate applied to respondents to move his admission to the bar of this court."

There is no allegation that petitioner has ever been a resident of Cambria county; there is not even an allegation that he is a citizen of the state of Pennsylvania.

At the hearing upon the return of the citation this court suggested that as Mr. Splane had first submitted himself to the jurisdiction of this court and failed to pass the examination prescribed by its rules for admission here, he should at least file a declaration of good faith toward this court in seeking admission to the courts of Cambria county, and not for the purpose of evading the rules prescribed for admission by this court. This Mr. Barton, who represented Mr. Splane, declined to file, but insisted that Mr. Splane was entitled to admission under the act of 1887. There was no allegation that the examinations to which Mr. Splane had been subjected here were unreasonable or unfair;

nor that he had been admitted to the Supreme Court, or the Cambria county courts, upon examination as to his qualification or merits.

## OPINION.

The act of 1887 provides that any attorney and counsellor at law who shall have been duly admitted to practice in any Court of Common Pleas and in the Supreme Court of this commonwealth shall be admitted to practice in any other court of this commonwealth upon motion simply, by exhibiting to the court (1) a certificate of admission to the Supreme Court and (2) filing a certificate of the presiding judge of the county or district from which he came, setting forth that he is of reputable professional standing and unobjectionable character. This petitioner has complied with the first of these conditions, but has he with the second? This court is of the opinion that he has not. The alleged certificate has not the seal of Cambria county court affixed, has not been proved, and may or may not be genuine. But assuming it to be genuine, it is substantially defective in that it does not, as prescribed by the act of 1887, set forth the county or district from which petitioner comes. The act evidently contemplated that the certificate should be made by the presiding judge of the county or district in which the attorney or counsellor at law last had his office and his chief place of practice. An attorney may be a member of a dozen or more bars, but he can only be said to come from that in which he is a resident practitioner. It would never occur to an attorney of reputable professional standing and unobjectionable character to apply for a certificate elsewhere. There is to be found the best evidence of professional standing and character, because there he is best known. If this be not the meaning of the act, then no matter how disreputable in professional standing or objectionable in character an attorney may be in the county in which he is known, he may make the certificates of presiding judges, in counties in which he is not known, the instruments of extending his evil influence indefinitely.

The legislature cannot be supposed to have contemplated such a result. The act was intended to be remedial. Its manifest purpose was to give attorneys who, in good faith, come from the county in which their office and chief place of

practice had last been, with certificates in proper form from the presiding judge of that county, and from the Supreme Court, a right of admission to any other court of the state. Is Cambria the county or district from which this petitioner comes? The certificate sets forth that he is a member of the bar of that county; but is silent as to whether or not he ever practiced or resided there. An inference cannot be drawn from the fact of his being a member of that bar, that he ever practiced there; for an attorney may be a member of a dozen different county courts, and have as many certificates substantially the same as this, at the same time, and may never have had in fact an office, or been a resident practitioner, in more than one of such counties. The certificate produced does not, therefore, purport on its face to be that of the presiding judge of the county or district from which petitioner comes, and he has not complied with one of the conditions of admission prescribed by the act of 1887. Assuming that this defect may be supplied by evidence aliunde the certificate, there is not an averment in the record that petitioner ever had an office, or resided, in Cambria county; nor, indeed, that he is even a citizen of Pennsylvania. If there is ground for an inference, it is that Allegheny is " the county or district from which he comes," and the record shows that he is not " sufficiently qualified " for admission to its bar.

The petitioner has therefore failed to make out any right of admission upon the purely technical ground selected by himself.

The record does not make out a meritorious case. The rules prescribed by the courts of this county for the admission of attorneys were adopted by the concurrent action of all the judges, with a view to the needs of the profession, and have been amply justified by results. The board of examiners has always been composed of members selected with reference to their peculiar fitness, from attorneys in active practice at this bar. The petitioner voluntarily submitted himself for examination under these rules, by this board; if he had any cause of complaint as to the mode of examination, his proper remedy was by an appeal to this court. No fault was found; and it must be taken as a fact that in 1887, and prior thereto, he was not sufficiently qualified to practice in this or any other court of

the state. There is no evidence and no averment that since that time he has supplied this deficiency by study. No presumption can be based on the certificates exhibited, that he was admitted either to the Supreme Court or that of Cambria county, upon examination. It is well known that it has not been the custom in the Supreme Court to admit upon examination as to qualifications, but upon certificates of admission in other courts; and the probabilities are just as strong that the admission to the Cambria county bar was made upon certificate, as that it was made upon examination. In view of his repeated failure to pass examinations here, the burden was plainly upon him to show that he had since supplied the deficiency, and this he has not done.

The case has a moral aspect, too, which it is important to notice. It has been seen that this petitioner voluntarily submitted himself for examination, with a view to admission to this bar and failed to pass. It is a just inference from the record that in his subsequent course his purpose was to secure admission to this bar in defiance and disregard of the rules of this court, although he had submitted himself to its jurisdiction and found no fault with its rules or his examination, and failed to show the necessary qualifications for admission. It cannot be supposed for a moment that either the Supreme Court, or the Cambria county court, would have admitted him had they been informed of the facts. In Ex parte Brown, 2 Pittsb. 152, an attorney who had obtained his admission by just such conduct was stricken from the roll, and the decree there made was afterward affirmed by the Supreme Court. It is essential to the just administration of the law that members of the bar should be men of reputable professional standing and unobjectionable character. It cannot be expected that those who obtain admission by breach of faith or subterfuge will ever attain this standard.

It will be seen that this petitioner is not entitled to admission to this court either on technical or on meritorious ground.

It is proper to add, in view of the position taken by the board of examiners, that their appointment contemplates that all motions for admission to the bar of this court, whether on examination or certificate, should be made by a member of the board; and the present case strikingly illustrates the wisdom of this construction.

Arguments.

And now, to wit: November 17, A. D. 1888, this matter came on to be heard upon petition and answer, and was argued by counsel, and upon consideration thereof, it is ordered, adjudged and decreed that the application of Joseph P. Splane for admission to the bar of this court, be refused and petition dismissed, for the reasons set forth in the opinion filed herewith, at his costs.

The answer further set forth that after the foregoing proceedings were terminated by the order of November 17, 1888, to wit, on November 21, 1888, the counsel for petitioner made the motion in writing as printed in his petition presented in this court, which motion was denied in the following order:

"And now, to wit: November 22, 1888, the within motion having been made in open court, and duly considered, is refused for the reasons (other than the want of authentication of Judge Johnston's certificate) contained in the statement of facts and opinion filed in this matter, No. 284 September Term 1888. PER CURIAM."

The respondents, so showing, prayed that the said rule to show cause, etc., might be discharged at the costs of the petitioner.

*Mr. A. J. Barton* (with him *Mr. L. C. Barton*), for the petitioner:

1. It surely cannot be presumed that the certificates filed in the court below, were granted without full knowledge of the truth of the statements contained in them. The character and standing of the judiciary of the commonwealth will forever render it impossible for an attorney "disreputable in professional standing or objectionable in character," to be able to "make the certificates of presiding judges of counties in which he is not known, the instruments of extending his evil influence indefinitely." All that is stated in the answer filed, in regard to that position, is mere assumption, without a single averment in support thereof.

2. There is not a single allegation charging fraud or deceit on part of the petitioner, in the answer of respondents. "Where fraud is relied on, as the ground of judicial action, it must be distinctly averred:" Kensington, etc., Turnpike Co., 97 Pa. 260; Angier v. Agnew, 98 Pa. 587. "Fraud must be

affirmatively shown; it will not be presumed; the presumption of innocence must prevail:" Shoemaker v. Kunkle, 5 W. 107; Lutton v. Hesson, 18 Pa. 109; Bear's Est., 60 Pa. 430; Commonwealth v. Railroad Co., 74 Pa. 94.

*Mr. Sol. Schoyer, Jr.*, for the respondents:

1. The act of 1887, applies to the cases of Pennsylvania lawyers, not those from other states, coming on certificates from foreign courts, and who have no rights as such except by comity. The condition precedent for admission on motion, among others, is, that the applicant for the benefit of the act must have been *duly* admitted to the bar of the Supreme Court. This due admission is governed by Rule VI., and the proviso to the rule is effective as to all applicants who commenced the study of the law after they had attained the age of twenty-one years. Now, the papers on file in the matter of the petitioner's admission to this court, show that he was admitted to Cambria county Common Pleas on June 11, 1888, and that his admission to this court, on October 8, 1888, was based upon his admission to the Supreme Court of New York, in pursuance of Rule VII. of this court. Therefore, the petitioner is not within the provisions of the act of 1887.

2. The exercise of the power conferred upon the judges of the several courts of record, by § 68, act of April 14, 1834, P. L. 354, to admit a competent number of persons of an honest disposition and learned in the law, to practice as attorneys in their several courts, was held in Brackenridge's Case, 1 S. & R. 187, to be a judicial and not a ministerial act; and, in that case, a mandamus was refused, not merely because of that fact, but also because, while the Supreme Court had the power to issue a writ of mandamus to the judges of an inferior court, the court below was not an inferior court, but a subordinate court, and therefore this court did not have the power to issue the writ prayed for. But in McLaughlin's Case, 5 W. & S. 272, this court held that a mandamus should not issue, on the sole ground that the act of admission, under the act of 1834, was a judicial and not a ministerial act. The other ground of refusal given in Brackenridge's Case was no longer good, because the act of 1836 conferred the power to issue writs of mandamus generally, omitting the word, inferior.

3. The act of 1887 has modified the act of 1834, to the extent of the free admission of members of the bar in good standing and unobjectionable character, duly certified to by the presiding judge of the county whence they come—their home county, being also members of the bar of the Supreme Court,— to any other court in the commonwealth, upon motion. The modification can have no greater extent, for the giving of the certificate implies knowledge by the presiding judge, as judge, of the matters contained in it. The certificate can only be a safeguard, when coming from a judge who has had opportunities of knowing the standing and character of the applicant. Moreover, confessedly, the petitioner was found unqualified in Allegheny county. And the petition afterwards filed by him in the Orphans' Court, failed to show to the court that he had been thrice rejected in his examinations before the examining board of that court, a suppression which lacked the element of good faith. For a similar suppression in O'Grady's Case, 4 W. N. 199, the admission of O'Grady was stricken from the record, and the counsel who moved his admission was afterwards suspended for one year: Deringer's Case, 4 W. N. 200.

OPINION, MR. CHIEF JUSTICE PAXSON:

The petitioner asks us to grant him a rule to show cause why a writ of mandamus should not issue to the judges of the Orphans' Court of Allegheny county commanding said judges to admit him to practice law in said court. The petitioner avers that he is a member of the bar of Cambria county, duly admitted in good standing, and that the Hon. ROBERT L. JOHNSTON, president judge of said county, did on the 19th day of November, A. D. 1888, certify in writing that the petitioner is a member of the bar of Cambria county, of reputable professional standing and of unobjectionable character; that he is a member of the bar of this (Supreme) Court, in good and regular standing; and that by virtue of the act of assembly of this state, approved the 7th day of May, 1885, entitled "an act to further regulate the admission of attorneys and counsellors at law to practice in the several courts of this commonwealth," and the supplement thereto approved the 19th day of May, 1887, he is entitled to admission to any of the courts of this commonwealth.

Opinion of the Court.

The respondents in their answer have set forth at length the proceedings in their court in regard to the petitioner's application for admission to the bar, from which we gather that upon two occasions he had been before the board of examiners, and in each instance had been rejected by said board as not being properly qualified; that subsequently he had been admitted in the Court of Common Pleas of Cambria county; that it was not alleged that he had ever resided in the said county or practiced there, or that he was even a citizen of Pennsylvania; nor was it alleged that the examinations to which the petitioner had been subjected in Allegheny county were unreasonable or unfair; nor that he had been admitted to the Supreme Court, or the Cambria County court, upon examination as to his qualifications or merits.

I will remark in passing that the petitioner's admission to this court occurred at the last term in the Western District, and was based upon a certificate of his admission to the Court of Errors and Appeals of the state of New York, which, under the comity which exists between the states, and our rule of court, seemed to entitle him to admission to our court. An examination of the certificate, however, shows that it is not that of the Court of Errors and Appeals, but of the Supreme Court of that state, certifying to his admission to the Court of Errors and Appeals. As his admission to the Supreme Court there, would not entitle him to admission here, and as one court is not permitted to certify the records and proceedings of another court, especially a higher court, we regard our order made at Pittsburgh, admitting the petitioner to practice in this court, as having been improvidently made.

The question now for our determination is whether the petitioner, after having twice presented himself before the duly constituted board of examiners, and having been twice rejected by them as not properly qualified to practice law, can, by procuring his admission in another county, aided by the act of assembly, compel his admission in the court where he has been rejected for incompetency. If he can, we have fallen upon evil times for the profession of the law.

We would not dignify such a proposition by discussing it, but for the acts of assembly referred to. The first section of the act of May 7, 1885 P. L. 16, is as follows: "That from and

after the passage of this act, it shall be lawful for any attorney and counsellor at law, who shall have been duly admitted to practice in any court of Common Pleas, and in the Supreme Court of this commonwealth, to be admitted to practice in any other court of this commonwealth, upon motion simply, and filing, together with his certificate of admission to the Supreme Court, a certificate of the presiding judge of the county from whence he came, setting forth that he is of reputable professional standing, and of unobjectionable character."

This act was merely declaratory of the law as it stood before, and was of no possible use. It merely made it lawful for the courts to do what it was lawful to do before its passage, and which had doubtless been done in numerous instances.

The act of May 19, 1887, P. L. 131, amended the act of 1885, by declaring that the court *shall* admit attorneys in the cases there recited.

If we concede the power of the legislature to pass such an act, it will not help the petitioner. He has not complied with it, for the reason that it requires a certificate of the "presiding judge of the county from whence he came, setting forth that he is of reputable professional standing," etc. This plainly means the certificate of the judge of the county where he has last lived and practiced law, who is presumed to know his qualifications in that regard, and who can truly and intelligently certify to his good character. A lawyer may chance to be a member of the bar of half the counties in the state; he may be admitted in a county other than the one in which he resides, for the mere purpose of trying a single case. It is the merest evasion of the act to present the certificate of the judge of a district where the petitioner has not last lived and practiced, and an admission to the bar obtained by such means might well be vacated by the judge who should inadvertently grant it, as a fraud upon the court.

Nor do we regard the act of 1887 as intended to apply to lawyers coming from other states upon certificates from foreign courts. These have no rights except by comity.

We are not willing to concede to the act of 1887 the full effect claimed for it. It was decided in Brackenridge's Case, 1 S. & R. 187, as long ago as 1814, that the admission of an attorney by a Court of Common Pleas is a judicial, not a minis-

terial act, and for this reason this court refused a mandamus in that case. The same reason would justify us in refusing it in this.

If there is anything in the constitution that is clear beyond controversy, it is that the legislature does not possess judicial powers. They are lodged exclusively in the judiciary as a co-ordinate department of the government. The executive and legislative departments can no more encroach upon the judicial department, than the latter can encroach upon them. Each department, in our beautiful system of government, has its own appropriate sphere, and so long as it confines itself to its own orbit the machinery of government moves without friction.

We have too much respect for the legislature to suppose it would ever intentionally step over the line which divides the different departments, but slight encroachments may some-times occur through inadvertence. In such cases it is the pro-vince of the judiciary to correct them. It is our duty to see that the checks and balances provided by the constitution are preserved. We are clearly of opinion that the act of 1887, though probably not so intended, is an encroachment upon the judiciary department of the government.

Moreover, it is as unwise as it is illegal. It is an imperative command to admit any person to practice law upon complying with certain specified conditions. Yet between the time when the applicant has obtained his certificate of good character from the judge of the district where he last resided and prac-ticed law, and the presentation of the same to the court which he seeks to enter, he may have committed some act which would render him an unfit person to practice law, or even to associate with gentlemen. No such iron-clad rule would ever have been adopted by the judiciary, to which the subject properly belongs. No judge is bound to admit, or can be compelled to admit, a person to practice law who is not properly qualified, or whose moral character is bad. The profession of the law is one of the highest and noblest in the world. The relation between attorney and client is a very close one and often involves mat-ters of great delicacy. The attorney is an officer of the court, and is brought into close and intimate relations with the court. Whether he shall be admitted, or whether he shall be disbarred, is a judicial and not a legislative question.

The rule for a writ of mandamus is discharged.