316 So.2d 45 (1975)
In re THE FLORIDA BAR.
In re Petition for ADVISORY OPINION CONCERNING APPLICABILITY OF CHAPTER 74-177.
No. 46773.
Supreme Court of Florida.
July 2, 1975.
*46 James A. Urban, President; Orlando, Alan C. Sundberg, Chairman of Disciplinary Procedure Committee, and Richard C. McFarlain, Asst. Director, Tallahassee, for The Florida Bar.
Robert L. Shevin, Atty. Gen., and William C. Sherrill, Jr., Asst. Atty. Gen., for The Commission on Ethics.
PER CURIAM.
This cause is before us upon petition of the Florida Bar for an advisory opinion concerning the applicability of Chapter 74-177, Laws of Florida, commonly known as the Financial Disclosure Law, to members of the Florida Bar acting in their historical professional capacity as "officers of the Court." We have jurisdiction under Article V, Section 15, Florida Constitution,[1] and the inherent right of a court to supervise the Bar as an incident to the court's power to control, admit to practice, and discipline attorneys.
The petitioner contends that the Florida legislature has no constitutional authority to include judicial officers and judicial entities within the scope of Chapter 74-177, asserting that the separation of powers doctrine renders said chapter unconstitutional as applied to the judicial branch.
The respondent Commission on Ethics contends that the law properly includes the judiciary, and, therefore, the Florida Bar being a public agency of the judicial branch of government, that the Board of Governors, officers of the Florida Bar, referees appointed by the Florida Bar, and other officials of the Bar are considered "public officers" under Chapter 74-177 and are required by the Act to file an annual financial disclosure statement.
Although we substantially agree with the contention of the petitioners, we as judicial officers of this state should not hide behind the wall of the separation of powers doctrine to avoid making the same financial disclosure as the legislature may require for nonjudicial officers. Canons 5 and 6 (which establish financial restrictions and disclosure for judicial officers) and Chapter 74-177 have differing requirements. We believe the judicial officers of this state must meet the same or a higher *47 standard of financial disclosure as the officers of the executive and legislative branches, and we have provided a procedure for that purpose at the conclusion of this opinion.
We agree with the petitioner that Chapter 74-177 is inapplicable as a code of conduct to officers of the judicial branch. However, the provisions of Chapter 74-177 prescribing candidate conditions are proper for all officers, including judicial officers. We hold that the legislature may establish a standard means of financial disclosure to be made at the time of qualifying for all candidates for office in every branch as part of the election code and as a condition for the candidate to seek election or retention to an office.
The legislature has no power under Article III, Section 18, Florida Constitution, to adopt an ethical code of conduct which would govern the judiciary, whether it concerns financial disclosure or otherwise. Article III, Section 18, Florida Constitution, reads as follows:
"Conflict of interest

"A code of ethics for all state employees and non-judicial officers prohibiting conflict between public duty and private interests shall be prescribed by law." [Emphasis supplied]
The legislative authority under this provision is limited to executive and legislative officials and to state employees.
This specific constitutional authority was not needed for ethical codes to be adopted. The authority for each branch to adopt an ethical code has always been within the inherent authority of the respective branches of government. Prior to 1968 only the judicial branch exercised this authority and, therefore, the drafters of the 1968 Constitution apparently saw a need to direct the legislature to prescribe a code of conduct for legislative and executive officers.
Adopting a code of ethics is only the first step. Each branch has its own separate authority and procedure for discipline of its officers  the executive by suspension authority of the governor, Article IV, Section 7, Florida Constitution; the legislative by contempt or expulsion under Article III, Section 4, Florida Constitution; and the judiciary by private or public reprimand or removal under Article V, Section 12, Florida Constitution. This enforcement procedure is supplemented by the impeachment process for executive and judicial officers under Article III, Section 17.
The judicial branch has both a code of conduct for the judiciary and a code of professional responsibility for lawyers, and, in addition, has the procedure to interpret them and the authority to enforce them through the Judicial Qualifications Commission and this Court.[2]
Although the issue of a judicial officer's financial disclosure is directly related, it is not the specific issue before this Court in this proceeding. We must determine whether members of the Bar of this state, when serving this Court in an administrative or supervisory capacity necessary to operate the Bar and the judicial system, are officers or employees of the state subject to Chapter 74-177. We hold that their regulation is exclusively within the power of the judicial branch pursuant to Article V, Section 15, of the Florida Constitution. This Court in 1964, with Chief Justice Drew presiding, said:
"... The power of courts to discipline attorneys at law is as ancient as the common law itself. As early as the 13th century there were organized in England the Inns of Court which were voluntary non-corporate and self-governing *48 legal societies. Then, the Benchers, who were senior members of the Inns, were entrusted with power to discipline and even disbar a barrister guilty of misconduct. The Courts, as successors to the `Benchers,' have from time immemorial, both in England and in this country, exercised as authority inherent in them, and without question, the right and power to discipline members of the Bar practicing before them. The constitutional power contained in Art. V, Sec. 23 of the Florida Constitution is but a recognition of this already existing authority of the Florida Courts. The independence of the Courts of the other two coordinate and equal branches of our state government does not permit of any interference by either of said branches in the exercise by the Courts of this state of their inherent and constitutional power to discipline members of the Bar. Any statute enacted by the Legislature which attempted to do so would of necessity be stricken down as unconstitutional. ..."[3] [Emphasis supplied]
Even without this specific constitutional authority, this Court and courts in other jurisdictions have uniformly held that the legislature has no power to control members of the Bar. Petition of Florida State Bar Association, 40 So.2d 902 (Fla. 1949); Petition for Integration of Bar of Minnesota, 216 Minn. 195, 12 N.W.2d 515 (1943); Ruckenbrod v. Mullins, 102 Utah 548, 133 P.2d 325 (1943); In re Integration of State Bar of Oklahoma, 185 Okla. 505, 95 P.2d 113 (1939); People ex rel. Chicago Bar Association v. Goodman, 366 Ill. 346, 8 N.E.2d 941 (1937); In re Integration of Nebraska State Bar Association, 133 Neb. 283, 275 N.W. 265 (1937); In re Opinion of the Justices, 279 Mass. 607, 180 N.E. 725 (1932); In re Cannon, 206 Wis. 374, 240 N.W. 441 (1932); In re Splane, 123 Pa. 527, 16 A. 481 (1889).
Lawyers are independent professionals, yet as "officers of the Court" they are part of the governmental structure involved with the administration of justice. They have a professional responsibility and an obligation, as a condition to their authority to practice law, to perform functions necessary for the operation of the judicial system. It is their professional duty honestly and ably to assist the courts in securing the efficient administration of justice.
An attorney's unique status in the court system is a result of historical development that dates back some seven centuries. Some of the historic obligations have been reduced to specificity in the new code of professional responsibility. The following are illustrations:
Legal Education and Admission to Bar
"EC 1-2 ... To assure the maintenance of high moral and educational standards of the legal profession, lawyers should affirmatively assist courts and other appropriate bodies in promulgating, enforcing, and improving requirements for admission to the bar. In like manner, the bar has a positive obligation to aid in the continued improvement of all phases of pre-admission and post-admission legal education.
Disciplinary Responsibility
"EC 1-4 ... A lawyer should, upon request, serve on and assist committees and boards having responsibility for the administration of the Disciplinary Rules.
Representation of Indigents
"EC 2-25 Historically, the need for legal services of those unable to pay reasonable fees has been met in part by lawyers who donated their services or accepted court appointments on behalf of such individuals. The basic responsibility for providing legal services for those unable to pay ultimately rests upon the individual lawyer, and personal involvement *49 in the problems of the disadvantaged can be one of the most rewarding experiences in the life of a lawyer. Every lawyer, regardless of professional prominence or professional workload, should find time to participate in serving the disadvantaged... .
"EC 2-29 When a lawyer is appointed by a court or requested by a bar association to undertake representation of a person unable to obtain counsel, whether for financial or other reasons, he should not seek to be excused from undertaking the [re]presentation except for compelling reasons. Compelling reasons do not include such factors as the repugnance of the subject matter of the proceeding, the identity or position of a person involved in the case, the belief of the lawyer that the defendant in a criminal proceeding is guilty, or the belief of the lawyer regarding the merits of the civil case."
Unlike the executive or legislative branches, the judicial branch depends upon this historical professional responsibility of lawyers to obtain the necessary noncompensated labor to effectively operate the judicial system. To classify an attorney who is fulfilling his obligation as an "officer of the Court" as a public officer subject to the control of the legislature would seriously impede the operation of the courts.
Ironically, if we held Chapter 74-177 applicable to such attorneys, the only penalty would be their removal from an office or an assignment in which they serve by reason of a sense of duty to the profession and this Court. The assignment to sit as referee in a disciplinary proceeding, or as member of a grievance committee, or as representative of an indigent, is a responsibility that is neither pleasant nor sought after. Clearly, making the lawyers who act in these capacities "public officials" could create chaos in the administrative operation of our judicial system.
We recognize that the Florida Bar is an agency of the judicial branch, Dacey v. The Florida Bar, 414 F.2d 195 (5th Cir.1969). The officers of the Florida Bar are acting in that capacity as "officers of the Court," and in accordance with Article V, Section 15, Florida Constitution, this Court has exclusive authority to regulate them. The Florida Bar v. Massfeller, supra.
In accordance with the findings here, we find that Chapter 74-177 is inapplicable to the Florida Bar officers, staff, referees, and committee members.
There has been very substantial concern and confusion among the judicial officers of this state as to whether or not they must comply with Chapter 74-177, and the resulting filing of differing financial forms with the Judicial Qualifications Commission, the clerks of the courts, and the Secretary of State. Although we have held Chapter 74-177 inapplicable to judicial officers, we believe the Florida Bar, the respective judges conferences, the Governor and the Legislature should have an opportunity to advise this Court how, if at all, the judicial code of conduct should be amended to avoid any claim that financial disclosure for a judicial officer is less than what is now required for an executive or legislative officer.
The judiciary has led the way concerning financial disclosure, commencing in 1969. In September of 1973 the method and means of that financial disclosure were expanded to include certain public disclosures, specifically, the filing for public information a statement of all compensation for personal services in the clerk's office of the court in which the judge serves. The present Judicial Canon 6 contains the authority for a party in a lawsuit to inquire of the Judicial Qualifications Commission whether the judge's financial statement contains the name of any specific person, corporation, or business which could be directly or indirectly affected by *50 the outcome of the case. In addition, judicial officers have been required since 1971 to file a financial statement and a copy of their income tax return with the Judicial Qualifications Commission. Granted, this information is not now public, but it is filed with a public body and information in the report can be obtained by a party in a lawsuit to determine whether there is conflict concerning a particular case before a specific judge. It also may be used in any misconduct proceedings. Further, the code now in effect places substantial investment restrictions on judicial officers not applicable to executive or legislative officers.[4] At the time this judicial canon was adopted in In Re The Florida Bar  Code of Judicial Conduct, 281 So.2d 21 (Fla. 1973), it clearly required more financial restriction and disclosure than any then existing statutory requirement for legislative or executive officers. To avoid any problem of multiple reporting, we stated in adopting that canon:
"We point out that Canon 6 requires the manner and method of filing financial reports. A compliance with Canon 6 supersedes the requirements of any statute relating to financial reporting and it will not be necessary for the justices and judges to file reports under any statute since such reports are filed under Canon 6." 281 So.2d at 22
As previously stated, Canons 5 and 6 and Chapter 74-177 have differing requirements.[5] We desire that the requirement for judicial officers be equal to or higher than those for legislative and executive officials. This court will shortly establish a committee composed of representatives of all interested groups to advise this Court on any changes that should be made in our present judicial canons. To ensure broad representation, we will request the executive and legislative branches to make representative appointments to this committee.
It is so ordered.
ADKINS, C.J., and ROBERTS, BOYD, McCAIN, OVERTON and ENGLAND, JJ., concur.
NOTES
[1] "Attorneys; admission and discipline

The supreme court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted."
[2] Florida was one of the first states in the nation to adopt the new more stringent code of conduct for the judiciary, 281 So.2d 21 (Fla. 1973), and the new code of professional responsibility for lawyers, 235 So.2d 723 (Fla. 1970).
[3] The Florida Bar v. Massfeller, 170 So.2d 834, 838 (Fla. 1964).
[4] The following are illustrations:

(a) A judge must refrain from financial and business dealings with lawyers or persons likely to come before him. Canon 5, subd. C (1).
(b) A judge may not serve as an officer, director, manager, advisor, or employee of any business. Canon 5, subd. C(2), except under certain conditions.
(c) A judge may not serve as an executor, administrator, trustee, guardian, or other fiduciary except of a member of his family and then only if it will not be in his court or a court under him. Canon 5, subd. D.
[5] Chapter 74-177 has been amended by Committee Substitute for House Bill 660 in the 1975 Legislature. At the time of the release of this opinion, said bill had not been signed by the Governor. This new legislation will not change our opinion in this cause. We note that the new act establishes a modified means of financial disclosure for candidates, officials, and employees. It redefines the persons who must make financial disclosure and apparently eliminates the alternative means for the official or employee to make a full disclosure by filing a financial statement and an income tax return.