797 So.2d 1235 (2001)
STATE of Florida, Cross-Appellee,
v.
Freddie Lee WILLIAMS, Cross-Appellant.
No. SC94989.
Supreme Court of Florida.
August 23, 2001.
Rehearing Denied October 16, 2001.
*1236 Robert A. Butterworth, Attorney General, and Scott A. Browne, Assistant Attorney General, Tampa, FL, for Cross-Appellee.
Chandler R. Muller and Stephanie H. Park of the Law Offices of Chandler R. Muller, P.A., Winter Park, FL, for Cross-Appellant.
PER CURIAM.
The State originally appealed the trial court's order vacating Freddie Lee Williams' death sentence and granting a new sentencing proceeding pursuant to Williams' Florida Rule of Criminal Procedure 3.850 motion. Although the State later voluntarily withdrew that appeal, Williams cross-appeals the denial of his remaining 3.850 claims. We have jurisdiction pursuant to article V, section 3(b)(1) and (9) of the Florida Constitution. For the following reasons, we affirm the trial court's order in its entirety.
Williams was convicted in 1981 for the first-degree murder of Mary Robinson. The facts of the crime, as stated by this Court's opinion on direct appeal, are as follows:
The victim was Mary Robinson, Williams' longtime girlfriend. On the night of the murder, the victim went to her sister's house and there received a number of upsetting telephone calls from Williams. After these calls, the victim and her sister went to jai alai and returned to the Williams-Robinson apartment around eleven o'clock. The sister left; Williams soon arrived and shortly thereafter called the sister to report that something had happened to the victim. When the sister returned, the police were already present.
Earlier that evening, Williams had borrowed a neighbor's handgun, telling him that he was going gambling. He testified that he left the gun on the dresser in a bedroom at home when he went out and that upon his return, the victim staggered toward him, already shot. He called the police and an ambulance. He also testified he did not want the police to find the weapon in his possession since he was on parole; he thus went into the bedroom and took the pistol from the dresser and threw it outside under a bush.
The state's case revolved around long-standing domestic arguments between Williams and the victim and in particular Williams' anger over the victim's supposedly taking a shower that night, a sign *1237 he took to mean that the victim was cleaning up after being with a boyfriend.
Williams v. State, 437 So.2d 133, 133-34 (Fla.1983). During the guilt phase of the trial, Williams testified that the murder was committed by an unknown assailant. According to Williams, the victim was already wounded when he entered the apartment. The jury, however, convicted Williams of first-degree murder. At the conclusion of the penalty phase, the jury recommended death by a vote of eight to four and the trial court imposed the death sentence. The trial court found two aggravators: the murder was committed while the defendant was under a sentence of imprisonment, and the defendant was previously convicted of another capital felony or a felony involving the use or threat of violence to another. The trial court did not find any statutory mitigators and concluded that the proffered nonstatutory mitigating evidence did not "rise to a nonstatutory mitigating circumstance which could offset the aggravating circumstances." This Court affirmed the conviction and sentence on direct appeal. See id.
In 1985, Williams sought permission to file a petition for writ of error coram nobis concerning allegedly newly discovered evidence. The request was denied by this Court. See Williams v. State, 478 So.2d 54 (Fla.1985). Subsequently, Williams filed a petition for a writ of habeas corpus claiming ineffective assistance of appellate counsel. That petition was also denied by this Court. See Williams v. Wainwright, 503 So.2d 890 (Fla.1987).
Williams filed his first 3.850 motion in 1986 and an amended motion was filed in 1987. Williams raised ten issues in the motion, five of which related to ineffective assistance of counsel. The State's response was not filed until 1991. Williams moved to strike the State's response as untimely but the motion was denied. In 1996, Judge Michael F. Cycmanick granted an evidentiary hearing for Williams' claims of ineffective assistance of counsel during the penalty phase. However, Judge Cycmanick summarily denied Williams' claims of ineffective assistance of counsel during the guilt phase, finding that the claims did not meet both prongs of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judge Cycmanick concluded that the remainder of the claims were procedurally barred.
The case was later transferred to Judge Jay Paul Cohen and an evidentiary hearing was held in 1998. In 1999, Judge Cohen granted Williams' motion in part, finding that defense counsel was ineffective during the penalty phase and that Williams was prejudiced as a result. Accordingly, Judge Cohen granted Williams a new penalty phase proceeding.
The State initially filed a notice of appeal of Judge Cohen's order but later voluntarily withdrew that appeal. Williams cross-appeals, alleging that Judge Cycmanick erred in failing to grant an evidentiary hearing on the claims of ineffective assistance of counsel during the guilt phase.
The specific issue before the Court in this case is whether the trial court erred in denying Williams' ineffective assistance of guilt-phase counsel claim without an evidentiary hearing. In Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000), this Court provided the following standard for determining whether an evidentiary hearing is required in a postconviction proceeding:
[A] defendant is entitled to an evidentiary hearing on a postconviction relief motion unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief, or (2) the motion or a particular claim is *1238 legally insufficient. The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden. However, in cases where there has been no evidentiary hearing, we must accept the factual allegations made by the defendant to the extent that they are not refuted by the record. We must examine each claim to determine if it is legally sufficient, and, if so, determine whether or not the claim is refuted by the record.
(Citations omitted.) In the present case, the trial court gave the following reason for summarily denying Williams' claim of ineffective assistance of guilt-phase counsel: "The Court finds that none of these claims meet both requirements of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." The two prongs that the trial court was referring to are:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Prejudice is shown only if there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. The Strickland court added that there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. 2052. This Court has stated that the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional standards and was not a matter of sound trial strategy. See Jones v. State, 732 So.2d 313, 319 (Fla. 1999).
In his 3.850 motion, Williams alleged that counsel was ineffective during the guilt phase for (1) failing to argue and present an intoxication defense and request a voluntary intoxication instruction, (2) failing to investigate the possibility of another person committing the murder, (3) inadequately investigating the gun powder residue evidence and inadequately cross-examining on this issue, (4) failing to object to a comment on Williams' right to remain silent, (5) failing to investigate the validity of the State's blood spatter evidence and inadequately cross-examining on this issue, (6) failing to object to the State's examples of premeditation, (7) failing to investigate that the "Mary" referred to by witnesses was not the victim but another Mary, and (8) suggesting to the jury that he did not believe his own client's version of events. In his brief before this Court, Williams groups these arguments into three categories: (1) defense counsel's failure to investigate and request a voluntary intoxication instruction, (2) defense counsel's rejection before the jury of Williams' claims of innocence and presentation of an incompatible avenue of defense, and (3) defense counsel's failure to object to the State's improper definition and examples of premeditation. We address each of these categories in turn.

Voluntary Intoxication
Williams claims that counsel was ineffective for failing to raise the voluntary intoxication *1239 defense at trial. However, Williams testified during the trial that he did not commit the crime. As pointed out by this Court in Williams v. Wainwright, 503 So.2d at 891 n. 1, "[I]ntoxication was not presented at the penalty phase as it would have been totally inconsistent with petitioner's theory that he did not commit the murder." See also Lavado v. State, 469 So.2d 917, 920 (Fla. 3d DCA 1985) (stating that voluntary intoxication defense concedes the commission of the act but requests the jury to excuse the conduct because the accused was incapable of forming or entertaining the intent necessary to commit the crime charged), quashed on other grounds, 492 So.2d 1322 (Fla.1986).
In Harich v. Dugger, 844 F.2d 1464 (11th Cir.1988), overruled on other grounds by Davis v. Singletary, 119 F.3d 1471 (11th Cir.1997), the Eleventh Circuit held that an attorney was not ineffective for failing to request an intoxication instruction when such an instruction was inconsistent with the defendant's theory of the case. In Harich, the defendant took the stand and testified that, although he was with the victim the evening of the murder, he was innocent of wrongdoing. He also indicated that he was under the influence of drugs and alcohol that evening. Armed with these facts, defense counsel adopted the defense strategy of asserting chiefly factual innocence. The defendant suggested later that defense counsel should have employed the alternative defenses of voluntary intoxication. The Harich court held, however, that a defendant must prove that the approach taken by defense counsel would have been used by no professionally competent counsel and that the approach taken by counsel was one which did not fall "within the objective yardstick that we apply when considering the question of ineffectiveness of counsel." Id. at 1471. The Harich court specifically noted that "[a]lthough inconsistent and alternative defenses may be raised, competent trial counsel know that reasonableness is absolutely mandatory if one hopes to achieve credibility with the jury." Id. at 1470 (quoting Harich v. Wainwright, 813 F.2d 1082, 1105 (11th Cir. 1987) (Fay, Circuit Judge, dissenting in part, concurring in part)). The Harich court concluded that suggesting to the jury that Harich was so drunk that he could not have intended the consequences of his acts would have totally undermined the position taken by Harich himself when he testified.
Similarly, we conclude that counsel cannot be deemed ineffective for failing to pursue the voluntary intoxication defense as such a defense would have been inconsistent with Williams' theory of the case. See Gavilan v. State, 765 So.2d 308, 308-09 (Fla. 5th DCA 2000) ("The defense of intoxication that could have negated proof of specific intent to commit the crimes was inconsistent with [the defense that the defendant did not commit the crime]."). Generally, "[c]ounsel may make a tactical decision not to pursue a voluntary intoxication defense, but a trial court's finding that such a decision was tactical usually is inappropriate without an evidentiary hearing." Kitchen v. State, 764 So.2d 868, 869 (Fla. 4th DCA 2000). Nevertheless, as the Eleventh Circuit Court of Appeals stated in McNeal v. Wainwright, 722 F.2d 674, 676 (11th Cir.1984), counsel's strategy in this case "amounted to a tactical argument well within the discretion of counsel, so obvious from the record that no evidentiary hearing was necessary."

Counsel's rejection before the jury of Williams' claims of innocence and presentation of an incompatible avenue of defense
Next, Williams claims that counsel was ineffective for rejecting Williams' *1240 claims of innocence. During closing arguments, Williams' attorney made the following statements:
Now, Freddie Williams was not [in the room] when all of this occurred. If you choose to believe that, you should find him not guilty. But, if you should choose to believe that Freddie Lee Williams was not telling the truth, I ask you not to be vindictive, not to be upset and not be mad at Freddie Lee Williams for lying to you, but consider instead what motive he would have for lying. Obviously, he knows he is in a great deal of trouble, but because he doesn't tell you the truth, don't vest [sic] your displeasure on him by finding him guilty of something the state has not proven. The state has to prove him guilty. He does not have to prove anything. No matter how many lies he may have told you, he doesn't have to prove anything. The state does.
. . . .
Now, we have a reasonable theory should you decide Freddie Lee Williams was the one that pulled the trigger. That is the two of them got intoxicated and had gotten into an argument over one thing or another; that Freddie Lee Williams had a fit of rage. He got the gun and pointed the pistol in her direction and pulled the trigger.
. . . .
I submit what happened in that scuffle, Freddie Lee Williams was there and he was trying to help her. He shot the gun off. Maybe it was to scare her. Maybe it was to hurt her. She was wounded very badly. He was there trying to help her. If he had wanted to kill her, he would have shot her again and again and again, but he didn't do that.
After the reviewing these statements, it is clear that counsel did not reject Williams' claims of innocencecounsel merely offered alternative theories to the jury.
This case is distinguishable from Nixon v. Singletary, 758 So.2d 618 (Fla.2000), wherein this Court remanded for an evidentiary hearing on the issue of counsel's ineffectiveness. In that case, counsel conceded his client's guilt to the crime charged (first-degree murder) during opening statements. In contrast, in the present case, counsel did not concede his client's guilt to the crime charged. Rather, counsel in effect told the jury, "If you believe my client's version of events, then you must find him not guilty; if you do not believe him, then he still is not guilty of first-degree murder, but only of a lesser-included offense."
Moreover, counsel's comments in the present case were made during closing arguments after all of the evidence had been presented. During the trial, the State presented the following evidence. Williams and the victim had been arguing on the night in question. Williams borrowed a neighbor's gun. Williams testified that he left the gun on the dresser in the bedroom and left the house, and upon his return, the victim staggered towards him, already shot. He stated that since he was on parole, he did not want the police to find the weapon in his possession, so he went into the bedroom and threw the gun outside under a bush. Ballistics tests revealed that the gun was the murder weapon. Rosa Lee Jones testified that she took Williams home on the night in question, and upon going inside, Williams observed the victim taking a shower, and returned to Jones' car and told her that the victim was cleaning up because she had probably been with another man. The State's theory was that Williams' suspicion that the victim had been with another man drove him to commit the crime. Based on all of this evidence, it cannot be said that counsel's *1241 decision to offer alternative theories, neither of which conceded the crime charged, amounted to representation that was unreasonable.
Our conclusion on this issue is consistent with a recent case decided by the Fourth District Court of Appeal on a similar issue. See Harris v. State, 768 So.2d 1179, 1183 (Fla. 4th DCA 2000) ("The trial record reflects that [Harris's] attorney's concessions [of lesser included offenses] constituted a reasonable tactical decision made in consideration of the overwhelming inculpatory evidence of appellant's statement to the police and other trial testimony."). See also McNeal, 722 F.2d 674 (holding that argument by defense counsel suggesting guilt on charge of manslaughter rather than first-degree murder was tactical decision); Faraga v. State, 514 So.2d 295 (Miss.1987) (holding that trial counsel's concession of defendant's guilt of murder, but not capital murder, during closing arguments in face of overwhelming proof was tactical decision). Therefore, we conclude that the trial court did not err in denying Williams an evidentiary hearing on this claim. See McNeal, 722 F.2d at 676 ("[Counsel's strategy] amounted to a tactical argument well within the discretion of counsel, so obvious from the record that no evidentiary hearing was necessary.").
Williams also argues that counsel was ineffective for failing to retain a gunpowder residue expert, failing to investigate the validity of the State's blood spatter testimony, neglecting to investigate the possibility that the "Mary" referred to by several witnesses was actually another "Mary" who lived at the complex, and failing to investigate the validity of Gloria Davis's testimony as well as other leads concerning the possibility that Williams was not the perpetrator. We conclude that the trial court did not err in summarily denying these claims, as Williams has failed to allege specific facts to support these claims.

State's definition and examples of premeditation
Finally, Williams claims that counsel was ineffective for failing to object to the State's improper definition and examples of premeditation. Williams complains about the following comments made by the State during closing argument:
Anytime anybody takes a gun, a .38 caliber gun and shoots another person in the head, that is premeditated. That is intent to kill.... Mr. Jones can argue to you until he is blue in the face, but shooting somebody in the head is about as solid and convincing evidence of intent to kill as there can be.
Later in the argument, however, the prosecutor also stated:
Now, this premeditation we are talking about is the intent to kill. That is all it is, a conscious intent or decision to do so. There is no instruction that will tell you that it is a fixed period of time on which this must occur. It just says there must be a reflection. That is all it is, a moment.
At the close of the arguments, the trial court read the following instruction to the jury regarding premeditation:
Killing with premeditation is killing after consciously deciding to do so. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.
*1242 To support his position on this issue, Williams relies on Waters v. State, 486 So.2d 614 (Fla. 5th DCA 1986). During the voir dire in Waters, the prosecutor defined premeditation as "killing after consciously deciding to do so" and "operation of the mind." Id. at 615. The prosecutor's definition failed to include any reference to reflection, "the integral second requirement for premeditation." Id. The district court held that the trial court erred by "allowing the prosecutor to follow this line of questioning over defense counsel's objection and permitted an improper definition of premeditation to form in the jury's mind." Id.
We find that the present case is distinguishable from Waters. First, as pointed out above, the State did refer to the element of reflection in its closing argument. Second, the trial court properly instructed the jury on the definition of premeditation. Thus, we find that the trial court did not err in denying Williams an evidentiary hearing on this issue, as the motion, files, and record in the case conclusively show that Williams was entitled to no relief.
Accordingly, for the reasons stated in this opinion, we hold that the trial court did not err in summarily denying Williams' claim of ineffective assistance of guiltphase counsel. We affirm the trial court's order in its entirety.
It is so ordered.
SHAW. HARDING, and QUINCE, JJ., concur.
WELLS, C.J., concurs with an opinion.
LEWIS, J., concurs in result only.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which PARIENTE, J., concurs.
WELLS, C.J., concurring.
I concur in the majority's opinion. I write to quote a portion of Judge Cohen's order, which I believe needs to be broadly published:
On December 29, 1986, Defendant filed a postconviction motion pursuant to Florida Rule of Criminal Procedure 3.850 which was subsequently amended. An order was entered on March 8, 1996 on Defendant's amended motion. That order granted an evidentiary hearing on claims II, III, and IV in which Defendant raised allegations of ineffective assistance of penalty phase counsel. Those claims will be addressed seriatim herein.
As a preliminary matter, the Court notes that the inordinate and unacceptable passage of time between Defendant's conviction and issuance of this Order. In particular, the file shows a seven year span from May 1989 to March 1996 during which apparently nothing was done to resolve this matter. The problem of undue delay is not novel to this case. It is virtually endemic in death penalty cases. Even now, Defendants are raising claims that extended confinement on death row constitutes cruel and unusual punishment. Thus far those challenges have been rejected.
As a result of the backlog of death penalty cases, the Florida Supreme Court has taken steps to closely monitor postconviction death penalty cases with tight time constraints. As trial judges, we are resistant and even resentful of orders that require us to drop everything else we are doing and respond to a Supreme Court mandated hearing. This case demonstrates why it has become necessary for the Supreme Court to take this approach. Justice Wells has written that such an extended time frame as seen in this case to finally rule on a *1243 postconviction motion "is totally unacceptable and is this Court's and the State's prime responsibility to correct." Knight v. State, 746 So.2d 423 (Fla.1998) (Wells, J., concurring in part and dissenting in part). While it is not this Court's intention to place blame, it is apparent that defense counsel, the prosecution, and the court each bear responsibility.
Certainly, Defendant himself has little motivation to expedite his own execution. Nevertheless, it is both defense counsel's and the prosecution's "professional duty honestly and ably to assist the courts in securing the efficient administration of justice." In re the Florida Bar, 316 So.2d 45, 48 (Fla.1975). Therefore, once it became apparent that no action, for whatever reason, was being taken on Defendant's postconviction motion, each attorney involved in this case, whether defense or prosecution, was obligated at the very least to inquire about the motion's status. Clearly this was not done.
Still, it is perhaps the court which was most at fault. Florida courts are quick to admonish defendants who stymie the efficient procession of cases through our courts by the invidious filing of frivolous, meritless, and impermissibly successive postconviction motions. These admonishments become hypocrisy when, as in this case, we contribute to the morass of capital cases by our own hand through neglect. Such dereliction undermines public confidence in our system of justice, risks prejudicing defendants, and reduces our capital punishment system to one "that seems unable to function except as a parody of swift or even timely justice." Walton v. Arizona, 497 U.S. 639, 669, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (Scalia, J., concurring). This case serves as an example of why it is incumbent upon our courts to remain vigilant in the administration of swift justice, and for judges to be particularly mindful of our ethical responsibility to "dispose of all judicial matters promptly, efficiently, and fairly." Fla. Code Jud. Conduct, Canon 3B(8).
State v. Williams, No. CR80-5117, Div. 10, order at 2-3 (Fla. 9th Cir. Ct. order filed Feb. 1, 1999) (emphasis added). I commend Judge Cohen for addressing frankly this problem.
All involved in the further processing of this casethe courts, the prosecutors, the defense counselneed to make this case a priority. This case was tried in October 1981, which means that in more than nineteen years this case has not even been processed through its penalty phase. There can be no satisfactory explanation or excuse for the passage of that period of time. We can only work steadfastly and with due focus toward completing the processing of this case and to be vigilant against this occurring in other cases.
ANSTEAD, J., concurring in part and dissenting in part.
I cannot agree that the appellant was not entitled to an evidentiary hearing on his claim of the ineffectiveness of counsel during the guilt phase since it is apparent that a facially valid claim has been stated and the record does not conclusively refute the claim.[1] We often forget that this *1244 is the test for entitlement to a hearing that we have explicitly set out in rules 3.850 and 3.851.
As the majority notes, Williams asserts three instances of counsel error within his ineffective assistance of guilt-phase counsel claim: (1) defense counsel's failure to investigate evidence of a defense of voluntary intoxication and to request a voluntary intoxication instruction; (2) defense counsel's confusing and ineffective presentation to the jury by his rejection of Williams' claims of innocence before the jury, as well as counsel's failure to present a viable alternative defense; and (3) defense counsel's failure to object to the State's use of improper definitions and examples of premeditation to the jury.

INTOXICATION
Interestingly, the transcript of the evidentiary hearing on the penalty-phase ineffectiveness claim demonstrates without dispute an entitlement to an evidentiary hearing on the intoxication issue. Further, Judge Cohen's factual findings on the defendant's intoxication explicitly support the defendant's claim that his counsel failed to adequately address this issue at the guilt phase of the trial:
Witnesses Willie "Wink" Brown and Willie "Blue" Brown essentially testified that they were drinking buddies with Defendant and that Defendant consistently drank large quantities of alcohol and was frequently intoxicated. This was corroborated by witness Carol Henson who testified that Defendant normally drank alcohol throughout the day. More importantly, witnesses Willie "Blue" Brown and Rosa Lee Jones testified that Defendant had been drinking the day he murdered the victim. From this evidence, a reasonable juror might have found that Defendant was likely intoxicated at the time of the murder and could have weighed Defendant's intoxicated state as a mitigating factor before imposing the death penalty. Whether the jury would or would not find voluntary intoxication a mitigating factor is not the issue before the Court.

Dr. Berland offered testimony that the use of alcohol by a person often exacerbates any mental illness that person might be suffering. Thus, Defendant might also have used his intoxication as a mitigating factor by attempting to show the jury that the murder was committed during an episode of mental illness that was substantially intensified by his use of alcohol.
Order on Defendant's Motion for Postconviction Relief at 11-12 (emphasis added). Judge Cohen expressly concluded that "a reasonable juror might have found that Defendant was likely intoxicated at the time of the murder." This finding conclusively demonstrates that there is an issue as to whether counsel properly handled the intoxication issue on behalf of his client. Obviously, if a similar finding were made during an evidentiary hearing concerning the issue of whether guilt-phase counsel was ineffective, Williams would have a basis to argue an entitlement to a new trial because of counsel's failure to address this issue.
Of course, at this time we must only decide whether Williams was entitled to an evidentiary hearing on this claim. In cases where there has been no evidentiary hearing, this Court must accept the factual allegations made by the defendant to the extent that they are not refuted by the record. See Peede v. State, 748 So.2d 253, 257 (Fla.1999); see also Freeman v. State, *1245 761 So.2d 1055, 1061 (Fla.2000). It has now been made apparent that Williams' claim is legally sufficient because his allegations are sufficient and the record affirmatively supports rather than refutes his claims.
The majority's suggestion that counsel could not be deemed ineffective for not asserting the intoxication defense because it would be inconsistent with the actual theory of defense presented is explicitly contradicted by the record. The record reflects that counsel himself gave short shrift to defendant's claim of innocence and actually attempted, albeit inadequately, to raise an intoxication defense. Hence, the defendant has not only had his own counsel abandon his defense of innocence, his counsel has also failed to advance an alternative defense that the record reflects could have been advanced based on the facts.

COUNSEL'S REJECTION OF WILLIAMS' CLAIMS OF INNOCENCE
Williams asserts that guilt-phase counsel was also ineffective during his closing arguments for rejecting Williams' testimony that he was innocent, but offering no viable alternative defense. In his argument to the jury Williams' attorney conceded problems with Williams' credibility and actually appears to attempt, albeit incompletely and awkwardly, to invoke an intoxication defense:
Now, Freddie Williams was not [in the room] when all of this occurred. If you choose to believe that, you should find him not guilty. But, if you should choose to believe that Freddie Lee Williams was not telling the truth, I ask you not to be vindictive, not to be upset and not be mad at Freddie Lee Williams for lying to you, but consider instead what motive he would have for lying. Obviously, he knows he is in a great deal of trouble, but because he doesn't tell you the truth, don't vest [sic] your displeasure on him by finding him guilty of something the state has not proven. The state has to prove him guilty. He does not have to prove anything. No matter how many lies he may have told you, he doesn't have to prove anything. The state does.
. . . .
Now, we have a reasonable theory should you decide Freddie Lee Williams was the one that pulled the trigger. That is the two of them got intoxicated and had gotten into an argument over one thing or another; that Freddie Lee Williams had a fit of rage. He got the gun and pointed the pistol in her direction and pulled the trigger.
. . . .
I submit what happened in that scuffle, Freddie Lee Williams was there and he was trying to help her. He shot the gun off. Maybe it was to scare her. Maybe it was to hurt her. She was wounded very badly. He was there trying to help her. If he had wanted to kill her, he would have shot her again and again and again, but he didn't do that.
(Emphasis added.) Initially, it is important to note that counsel's argument provides further record support for the need of an evidentiary hearing on the intoxication issue. However, while mentioning intoxication, counsel sought no instructions from the court providing guidance to the jury as to how the intoxication issue should be treated. Hence, contrary to the majority's position, counsel's argument supports appellant's claim that counsel was ineffective since he essentially abandoned Williams' own claim of innocence but offered to the jury an incomplete theory of *1246 defense based on intoxication.[2] In addition, counsel failed to object to the State's erroneous explanation to the jury of the legal meaning of premeditation, an explanation very similar to the one found harmful by the district court in Waters v. State, 486 So.2d 614 (Fla. 5th DCA 1986).
All of this simply illustrates the need for an evidentiary hearing to sort these matters out. When all three assertions of incompetency are viewed together, it is apparent that an evidentiary hearing was required since Williams has asserted that he received virtually no defense, and that, in fact, his counsel affirmatively damaged his case in his confusing presentation to the jury.
PARIENTE, J., concurs.
NOTES
[1] Further, as this Court has noted many times, trial courts should err on the side of granting hearings, especially in death penalty cases, where the hearing will be the only opportunity a death-sentenced defendant will have to challenge the work done on his behalf by his lawyer. Of course, the grant of such a hearing will also eliminate the frequent delay that occurs when such a hearing is denied and that determination is overturned on appeal. There is little downside to granting an evidentiary hearing on postconviction relief in a death penalty case. Delay is minimized and the quality of the process is greatly enhanced.
[2] This case is somewhat analogous to Harvey v. Dugger, 656 So.2d 1253 (Fla.1995), where the defense attorney conceded guilt during opening statements but argued for the lesser included crime of second-degree murder. On appeal from the denial of the 3.850 motion, this Court remanded for an evidentiary hearing:

Harvey argues that he was denied effective assistance of counsel in the guilt phase of the trial when without his consent, defense counsel conceded Harvey's guilt in the opening argument. Harvey maintains that this concession nullified his fundamental right to have the issue of guilt or innocence presented to the jury as an adversarial issue. Because the record before us is unclear as to whether Harvey was informed of the strategy to concede guilt and argue for second-degree murder, we remand to the trial court for an evidentiary hearing on this issue.
Id. at 1256.