**Willie Lee McNEAL, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Respondent-Appellee.**

**No. 83–3331 Non-Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Jan. 3, 1984.

Margene A. Roper, Daytona Beach, Fla., for respondent-appellee.

Before GODBOLD, Chief Judge, RONEY and TJOFLAT, Circuit Judges.

PER CURIAM:

Willie Lee McNeal was tried and convicted in Florida of first degree murder and sentenced to life imprisonment. After exhausting his state court remedies, *McNeal v. State,* 409 So.2d 528 (Fla.Dist.Ct.App. 1982); *McNeal v. State,* 413 So.2d 876 (Fla. 1982), he sought and was denied 28 U.S.C.A. § 2254 relief in the federal court. In a remarkably good pro se brief, McNeal argues that he was denied constitutionally effective counsel because of his attorney's final argument to the jury. Agreeing with the Florida state court and the district

court that the argument was tactical and within the discretion reposed in counsel, we affirm.

We take the essential facts shown by the evidence at the state trial almost verbatim from appellant's pro se brief. The prosecution showed that the death of Willie Charles Offord arose from an incident on September 14, 1979, in front of Simmons Bar in Palatka, Florida. During the evening hours on the day in question, Daniel McGee, Jr., picked up Willie Lee McNeal at his home and drove him to Greek Jon's Bar. Following a brief stop there, the pair proceeded to McNeal's brother's house in order to obtain a shotgun which McNeal intended to loan to McGee. The shotgun was placed in the back seat of McGee's car and the pair eventually arrived at Simmons Bar. While the two were in front of Simmons Bar, McNeal became involved with Offord in a physical confrontation. McNeal and Offord engaged in a short scuffle in front of the Bar in the presence of several witnesses. Offord was able to physically subdue McNeal with little difficulty.

Offord released McNeal following the conclusion of the incident and warned him, "If you get a gun at me, you better use it". Following the incident, McNeal went into a nearby bar, but returned shortly thereafter with a can of beer in his hand. He approached McGee and requested the car keys. McGee was apparently concerned about the presence of the shotgun in the back seat and initially refused the request. When he was convinced that McNeal was sufficiently calm, however, he complied with the request.

McNeal drove away from the area but returned shortly thereafter. Offord, who was still outside of Simmons Bar, stepped into an adjacent alleyway in order to urinate. As he was doing so, he was shot and killed by a shotgun blast to the head.

Clarence Williams testified that he observed McNeal at the other end of the alley. As Offord fell to the ground, McNeal turned and ran out of the other end of the alley. McNeal later stopped by the home of a woman that he knew and asked her to take care of his baby, since he was on the way to turn himself over to the police after shooting Offord.

McNeal arrived at Palatka Police Department in an extremely agitated state. Deputy Debbie Fulgham asked if he was present as a result of an incident at the bar. When McNeal replied affirmatively, Deputy Fulgham advised him of his rights. McNeal stated that he understood his rights and then gave a full confession.

McNeal told Deputy Fulgham that he and Offord had gotten into a fight at Simmons Bar. After the fight, he drove around in McGee's car before returning to the rear of Simmons Bar. He loaded the shotgun and waited behind the bar for Offord. When Offord stepped into the alleyway, he told him that he should not have beat him. McNeal admitted that he then shot Offord. After the shooting, McNeal threw the weapon underneath a nearby two-story house.

At the close of the state's case, counsel for McNeal moved for a directed verdict of acquittal, contending that the state had not presented a prima facie case, and that premeditated murder was not sufficiently proven. The trial court denied the motion. No testimony or physical evidence was presented by the defense.

■ During his final argument to the jury at the close of trial, McNeal's attorney said,

We submit to you that when you look at all these circumstances, you're going to find that perhaps what has been shown to you at most to have been proven beyond a reasonable doubt is the offense of manslaughter in that we submit to you that the evidence at best would have shown that the Defendant acted out of anger, rage, resentment, and exasperation over what the deceased, Charles Offord, had just done to him prior to the fatal shooting, that this exasperation, rage, anger, and resentment was so intense as to overcome the judgment and to render this defendant incapable of any type of calm reflection. Yes, that's the offense at

most that the state has shown, that's one of manslaughter.

The defense counsel went on to say:

We take the position from the Defense standpoint that when we initially got up here on our closing statement we set forth to you as clearly as we could what we felt the facts to be and what we recalled the evidence being and what the one and only logical result and conclusion from that could be when viewed in terms of the standards that you're required to apply in this case, that result being manslaughter.

McNeal argues that this argument amounted to an admission of guilt by his counsel, without his prior knowledge or consent. As to this argument, the Florida court said:

We do not think courts should review any specific discretionary or judgmental act or position of trial counsel, whether tactical or strategic, on an inquiry as to effectiveness of counsel.

When faced with the duty of attempting to avoid the consequences of overwhelming evidence of the commission of an atrocious crime, such as a deliberate, considered killing without the remotest legal justification or excuse, it is commonly considered a good trial strategy for a defense counsel to make some halfway concessions to the truth in order to give the appearance of reasonableness and candor and to thereby gain credibility and jury acceptance of some more important position. To be effectual, trial counsel should be able to do this without express approval of his client and without risk of being branded as being professionally ineffective because others may have different judgment or less experience.

*McNeal v. State,* 409 So.2d at 529 (citations and footnote omitted).

The district court also rejected defendant's claim.

In the face of all of this evidence, it appears that trial counsel's primary strategy was to demonstrate that the shooting was done without premeditation. He argued this point before the jury and tried to bring this out during the trial. It appears that this strategy was entirely proper in view of the evidence introduced against Petitioner at trial.

Finally, Petitioner states that the 'admission was without his consent.' However, an attorney's decisions on strategy at trial may bind his client even when such decisions are made without consultation.

Both the state court and the district court were correct in holding that this argument amounted to a tactical argument well within the discretion of counsel, so obvious from the record that no evidentiary hearing was necessary. *Schultz v. Wainwright,* 701 F.2d 900, 901 (11th Cir.1983); *Dickson v. Wainwright,* 683 F.2d 348, 351 (11th Cir.1982).

■ The sixth amendment guarantee of effective assistance of counsel is counsel reasonably likely to render and rendering reasonably effective assistance given the totality of the circumstances. *Wiley v. Wainwright,* 709 F.2d 1412, 1413 (11th Cir. 1983). Counsel will not be deemed unconstitutionally deficient because of tactical decisions. *Adams v. Wainwright,* 709 F.2d 1443, 1445 (11th Cir.1983); *Ford v. Strickland,* 696 F.2d 804, 820 (11th Cir.1983) (en banc); *see United States v. Costa,* 691 F.2d 1358, 1364 (11th Cir.1982). McNeal's attorney's arguments to the jury concerning manslaughter were tactical and strategic. Throughout the trial and argument, his attorney stressed McNeal's emotional state in an attempt to negate premeditation. In view of the overwhelming evidence against McNeal, including a tape recording of his confession to the shooting, the strategy of trial counsel was proper and would not amount to a constitutional violation.

■ McNeal claims the attorney's statements amounted to a guilty plea entered without his consent, relying on a Sixth Circuit case, *Wiley v. Sowders,* 647 F.2d 642 (6th Cir.), *cert. denied,* 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981). *Wiley* is distinguishable from the case at bar. There the attorney repeatedly stated that his clients were guilty of the offenses charged, that the state had proven their guilt, but

requested that the jury show leniency. *Id.* at 644–45. In the case at bar, McNeal was being tried for first degree murder. His attorney did not state that McNeal was guilty of murder. Instead, he stated that "at best" the government had proven only manslaughter because they did not prove premeditation. The majority of his defense case centered around this proposition. During the trial, his attorney tried to establish a self-defense claim. In view of the tape recorded confession played at trial, however, such a defense did not play a central role.

An attorney's strategy may bind his client even when made without consultation. *Thomas v. Zant,* 697 F.2d 977, 987 (11th Cir.1983). In light of the overwhelming evidence against him, it cannot be said that the defense strategy of suggesting manslaughter instead of first degree murder was so beyond reason as to suggest defendant was deprived of constitutionally effective counsel.

AFFIRMED.