Hillsborough
No. 90-256

### The State of New Hampshire

### v.

### Anthony Anaya

June 12, 1991

*John P. Arnold,* attorney general (*Jeffrey A. Meyers,* attorney, on the brief and orally), for the State.

*Twomey & Sisti Law Offices,* of Chichester (*Paul Twomey* and *Jonathan R. Saxe* on the brief, and *Mr. Twomey* orally), for the defendant.

JOHNSON, J.   The defendant, Anthony Anaya, was convicted of being an accomplice to second degree murder, *see* RSA 630:1-b, 626:8, and appeals the Superior Court's (*Gray,* J.) denial of his motion for new trial. We have previously considered this case on other grounds. *State v. Anaya,* 131 N.H. 330, 553 A.2d 297 (1988). The motion alleged ineffective assistance of counsel and was based on his attorney's plea to the jury, during closing argument, to convict Anaya of being an accomplice to second degree murder, rather than first degree murder. We reverse and remand for a new trial.

The pertinent facts of this case are as follows. Heriberto Pichardo was found shot to death in a Nashua parking lot in late December 1986. Preliminary investigation led police to suspect that: (1) Anaya and a Robert Vargas planned Pichardo's murder; (2) Anaya delivered the murder weapon to Vargas; (3) Anaya drove Vargas to and from the murder scene; and (4) Vargas fired the gun that killed Pichardo. When the police questioned Anaya, he confirmed their suspicions and signed a confession, which he later substantially recanted. The police then arrested Vargas and Anaya, and they were charged, respectively, with first degree murder and accomplice to first degree murder.

A law firm (not counsel on this appeal) accepted an appointment in January 1987 to represent Anaya, and the case was assigned to two attorneys. Vargas eventually accepted a plea-bargain that allowed him to plead guilty to second degree murder in exchange for a dismissal of the charge of first degree murder. Anaya refused a similar plea-bargain, contrary to the repeated advice of his attorneys, declaring at one point, "I want to argue this case in court, I want to prove my innocence."

On December 7, 1987, Anaya's attorneys wrote him a detailed letter acknowledging that he wished to proceed to trial and again urging him to accept the plea-bargain offered by the State. The attorneys stated in their joint letter that they thought it unlikely a jury would be convinced of his innocence, and then explained:

> "It would appear that if you choose to go to trial, our theory of defense would have to be that this was not a premeditated, planned First Degree Murder but rather that this was a Second Degree Murder in that you only became aware of the actual homicide as it actually was occurring. This defense is potentially going to be quite difficult in light of the statements and other evidence in the case. Nonetheless, I do want you to understand that we do not feel there is any way legally that we can argue anything else credibly to the jury that would have any credibility whatsoever."

The attorneys admitted that their "theory of defense" was much different than Anaya's, "which we understand is to plead not guilty and maintain your innocence with regard to this act." They advised Anaya, however, that they could not successfully argue Anaya's innocence to the jury, and suggested he ask the court to appoint new counsel if their theory of defense was unacceptable to him. They closed the December 7 letter with the following statements:

> "You have been offered a negotiated plea disposition to a second degree murder charge that would result in your parole eligibility sometime after 20–25 years. If you go to trial, the very best that you can hope to accomplish in our judgment is a verdict of guilty to Second Degree Murder. Our question to you, is why take the risk of being convicted of First Degree Murder when the Attorney General[']s Office is offering a disposition to Second Degree which is all that you could hope to obtain by going to trial anyway?"

Anaya apparently never requested new counsel, continued to refuse the State's offered plea-bargain, and never answered the question posed by his attorneys. He simply insisted on a trial on the charges contained in the indictment. Trial preparation progressed, and on December 31, 1987, the superior court held a hearing to determine whether the defense could subpoena certain attorneys representing the State in order to elicit testimony regarding Vargas's plea agreement. At the hearing, and in the presence of Anaya, one of his attorneys stated that "Mr. Anaya should not be forgiven for his

actions. I'm not going to ask the jury to allow him to walk out of the courtroom." He explained that he wanted the jury to know about Vargas's plea-bargain, because "it seems to me that I should be able to persuade the petit jury that the man who drove the car, the man who got the gun, the man who assisted in that, is guilty of being an accomplice to second degree murder." From the record it is clear that Anaya knew his attorneys thought that a jury verdict of accomplice to second degree murder was all they could hope to accomplish. However, it is equally clear that Anaya did not agree with that appraisal of his case; he wanted a trial on the charges and was willing to take his chances.

Trial began on January 19, 1988. During his opening statement, Anaya's attorney told the jurors, "We're not asking for an acquittal," but asked the jury to "to convict him [Anaya] of being an accomplice to second degree murder." Counsel explained, "We agree that [Anaya] drove the car, but it was his belief that what was happening is that Mr. Vargas was going to rerob Mr. Pichardo, not to kill him."

After the prosecution rested, Anaya took the stand and testified that he was completely innocent. He admitted that he delivered the murder weapon to Vargas and drove him to meet Pichardo, but maintained that he had no knowledge of the planned murder. Rather, he testified, he assumed Vargas was meeting Pichardo in order to conduct a drug deal.

At the close of the evidence, Anaya met with his two attorneys to discuss the planned closing argument. It is uncontested that Anaya told his attorneys he wanted counsel to argue to the jury he was innocent of both accomplice to first degree murder *and* accomplice to second degree murder. From that discussion it can reasonably be concluded that Anaya was not aware that his counsel would continue to persist in the tactic of asking the jury to find the defendant guilty of the lesser-included offense of accomplice to second degree murder.

Counsel's closing argument argued for acquittal on the charged offense of accomplice to first degree murder, but contained at least five explicit requests for conviction of accomplice to second degree murder. For example, the attorney stated: "Please, please, please do as we're asking you: convict him of being an accomplice to second degree murder. He was bad." Anaya became so agitated during his attorney's closing argument that his other attorney had to physically restrain him. This attorney later testified on the present motion that counsel's closing arguments were "contrary to my understanding of what the wishes of Mr. Anaya were as he expressed them to [counsel who presented the closing argument]."

Anaya filed a motion for new trial, arguing that his attorney's closing statements constituted an involuntary plea of guilty, as well as ineffective assistance of counsel. The superior court denied the motion following an April 1990 hearing, finding and ruling that (1) counsel's admission of Anaya's guilt of the lesser-included offense of accomplice to second degree murder did not constitute a guilty plea; (2) "there is sufficient evidence to show that the defendant had prior knowledge of defense counsel's strategy and that he failed to object to it"; (3) counsel's "closing argument was . . . a reasonable tactical decision"; (4) prejudice to Anaya cannot be presumed in this case; and (5) Anaya suffered no actual prejudice as a result of [counsel's] statements. This appeal followed.

Anaya argues on appeal that counsel's statements during closing argument were the functional equivalent of a guilty plea, and were made without Anaya's express consent. Thus, he maintains, the statements constituted an involuntary plea of guilty in violation of the fifth, seventh, and fourteenth amendments to the United States Constitution, and part I, article 15 of the New Hampshire Constitution. Moreover, Anaya argues, the statements violated his right to effective assistance of counsel, as guaranteed by the sixth amendment and part I, article 15, because he was in effect pled guilty without his consent. In such a case as this, he avers, prejudice is presumed and need not be shown. The State's arguments on appeal mirror the findings and rulings of the superior court.

We do not address Anaya's first argument, that counsel's statements during closing argument constituted an involuntary plea of guilty, because our decision on the second issue is dispositive of the case. Thus we turn to Anaya's contention that counsel's statements violated Anaya's right to effective assistance of counsel, as guaranteed by the sixth amendment and part I, article 15. The analysis is the same under both the Federal and the State Constitutions, *see Humphrey v. Cunningham*, 133 N.H. 727, 733, 584 A.2d 763, 767 (1990), and "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," *Strickland v. Washington*, 466 U.S. 668, 686, *reh'g denied*, 467 U.S. 1267 (1984).

The test for determining ineffectiveness requires the defendant to show first that counsel's performance was deficient, *see State v. Fennell*, 133 N.H. 402, 405, 578 A.2d 329, 331 (1990), and must overcome "the strong presumption that counsel's conduct falls

within the limits of reasonable practice," *State v. Faragi,* 127 N.H. 1, 4–5, 498 A.2d 723, 726 (1985). Second, the defendant must show that counsel's alleged deficient performance actually prejudiced him or her by affecting the outcome of the proceeding. *See Fennell supra.* Prejudice is presumed, however, if the defendant can show that the attorney "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic,* 466 U.S. 648, 659 (1984). We hold that Anaya has met his burden of proving that counsel's performance was deficient; further, we hold that under these facts, prejudice to the defendant may be presumed, and need not be proven.

The State argues that counsel's statements were not the functional equivalent of a guilty plea, and that therefore we must simply judge whether the statements were reasonable trial strategy. We reject this approach.

Cases dealing with counsel's arguments to the jury may be grouped in two categories. The first category consists of cases in which the defendant's attorney tells the jury the defendant is guilty of the charged offense. Reviewing courts tend to view this conduct as warranting automatic reversal. *See, e.g., Wiley v. Sowders,* 647 F.2d 642, 650–51 (6th Cir.) (sixth amendment claim), *cert. denied,* 454 U.S. 1091 (1981); *People v. Redmond,* 50 Ill. 2d 313, 316–17, 278 N.E.2d 766, 768–69 (1972) (due process claim). The other category of cases cited by the State consists of those in which the attorney tells the jury the defendant is guilty of a lesser-included offense of the crime charged, as counsel did here. Courts faced with this situation generally, although not always, tend to reject the defendant's claim of ineffective assistance of counsel, and view the attorney's conduct as a sound strategical move made in the face of overwhelming evidence of the defendant's guilt. *See, e.g., McNeal v. Wainwright,* 722 F.2d 674, 676–77 (11th Cir. 1984) (specifically distinguishing the case from those in which the attorney admits the defendant's guilt to the charged offense); *People v. Siverly,* 551 N.E.2d 1040, 1046–47 (Ill. App. 1990); *Alexander v. State,* 782 S.W.2d 472, 474–75 (Mo. App. 1990); *Faraga v. State,* 514 So. 2d 295, 308–09 (Miss. 1987), *cert. denied,* 487 U.S. 1210 (1988). *But see State v. Harbison,* 315 N.C. 175, 179–81, 337 S.E.2d 504, 507–08 (1985) (court held that attorney provided ineffective assistance of counsel where he asked jury to convict defendant of lesser-included offense without obtaining defendant's consent), *cert. denied,* 476 U.S. 1123 (1986). In some of these cases, the court explicitly states that the defendant's consent to the attorney's conduct is irrelevant, *see McNeal, supra* at 677, or that a show-

ing of such consent is not necessarily required of the prosecution, *see Siverly, supra* at 1046. In others, the issue of consent is not addressed. *See Alexander supra*; *Faraga supra.*

We note that the four cases cited as falling in the second category are distinguishable from the case before us in two important respects. First, none of the four defendants proclaimed his or her complete innocence on the witness stand, as Anaya did. *See McNeal supra*; *Siverly supra*; *Alexander supra* (court held that counsel's statements were a proper trial strategy, citing fact that defendant did not testify); *Faraga supra*; *see also Redmond, supra* at 316, 278 N.E.2d at 768–69 (court ruled counsel's admissions improper, emphasizing disparity between defendant's testimony and counsel's closing remarks). Second, there is no indication that any of these four defendants rejected an opportunity to plead guilty to the same lesser-included offense urged upon the jury by their attorneys, as Anaya did in this case. *See McNeal supra*; *Siverly supra*; *Alexander supra*; *Faraga supra.*

■ We hold that the propriety of counsel's decision, for purposes of the sixth amendment and part I, article 15, should be judged according to whether Anaya authorized counsel to make these statements to the jury, particularly where the defendant discussed counsel's proposed argument with him at the close of the evidence. As we have noted, Anaya had testified he was completely innocent and at that time told counsel he wanted his innocence argued to the jury. Anaya could, under these facts, expect that counsel would not persist in a different trial strategy.

■ Although the decision to admit guilt of a lesser-included offense is arguably less serious than the decision to admit guilt of the offense charged, it is undeniably a momentous one. If a jury is able to convict a defendant of a lesser-included crime, the defendant's admission of guilt to that crime puts his or her liberty in immediate, grave jeopardy. Thus, the decision to admit such guilt should remain inviolably personal to the defendant. See N.H. RULE OF PROF. CONDUCT 1.2 ("[a] lawyer shall abide by a client's decisions concerning the objectives of representation").

■ The State argues that this court should not disturb the trial court's finding "that there is sufficient evidence to show that the defendant had prior knowledge of defense counsel's strategy and that he failed to object to it." The uncontested facts belie the finding that Anaya failed to object to counsel's strategy. Anaya refused to plead

guilty to the very jury finding urged by his counsel. As the letter of his two attorneys suggests, it made no sense to reject the offered plea of accomplice to second degree murder and then have counsel urge the jury to convict him of the same offense. Further, Anaya took the stand and testified that he was innocent of accomplice to both first and second degree murder. Finally, when the evidence was closed, Anaya urged counsel to argue his total innocence. We hold that these uncontested facts constitute the functional equivalent of an objection by Anaya to his counsel's strategy. To require the defendant to repeatedly object to the court that he disagreed with counsel's strategy, particularly during a closing argument, would be to place an unreasonable burden upon the defendant. We therefore find that Anaya has met the requirements of the first, or ineffective performance, prong of the test for determining his counsel's effectiveness. *See State v. Fennell*, 133 N.H. at 405, 578 A.2d at 331.

■ The second prong of the ineffectiveness of counsel test generally requires a finding of actual prejudice resulting from the attorney's error. *See id.* On the basis of the particular facts before us, however, we hold that this requirement need not be met because the error's severity prevented any meaningful adversarial testing of the prosecution's case against Anaya for accomplice to second degree murder. *See United States v. Cronic*, 466 U.S. at 659. By effectively admitting Anaya's guilt to this lesser-included offense, over his client's objection, counsel deprived Anaya of his right to have the jury decide his guilt, rendered meaningless his right to take the stand and proclaim his innocence, and eliminated the State's burden to prove Anaya's guilt of this offense beyond a reasonable doubt. *See State v. Harbison*, 315 N.C. at 180–81, 337 S.E.2d at 507–08. Thus, prejudice may be presumed, and we hold that Anaya was denied effective assistance of counsel, in violation of the sixth amendment of the United States Constitution and part I, article 15 of the New Hampshire Constitution.

*Reversed and remanded for a new trial.*

All concurred.