689 A.2d 1386

GERALD J. SELL, PLAINTIFF–APPELLANT, v. NEW JERSEY
TRANSIT CORPORATION, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 19, 1997—Decided March 19, 1997.

Before MICHELS, KLEINER, and COBURN, JJ.

*Cynthia M. Dennis* argued the cause for appellant New Jersey Protection and Advocacy, Inc. (*Linda D. Headley,* Senior Managing Attorney; *Ms. Dennis,* on the brief).

*David S. Griffiths,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel).

The opinion of the court was delivered by

KLEINER, J.A.D.

Petitioner Gerald J. Sell appeals from a final administrative decision of the New Jersey Transit Corporation (NJT) dated December 26, 1995, denying him eligibility for Access Link paratransit services.

Petitioner is a thirty-eight-year-old, mentally retarded man with a full scale I.Q. of 66. He lives in a trailer park in Williamstown and is a sheltered workshop employee at the Abilities Center in Westville, as he is incapable of "competitive employment." The

Abilities Center's principal purpose is "to provide individuals with disabilities with vocational training in order that each individual may successfully develop and ultimately attain a realistic vocational goal in the community." NJT is a governmental agency, created by the New Jersey Public Transportation Act, *N.J.S.A.* 27:25–1 to –34.

Under the Americans With Disabilities Act (ADA) and regulations promulgated by the United States Department of Transportation (USDOT), each state must provide transportation to individuals with disabilities who would otherwise not be able to use public transportation. *See* 42 *U.S.C.A.* § 12143(a). NJT created "Access Link" paratransit bus service as a way of meeting the requirements of the ADA. Access Link is curb-to-curb bus service for qualifying disabled people. Following USDOT regulations, NJT created a formal process for determining an applicant's eligibility for Access Link service. *See* 49 *C.F.R.* § 37.125. NJT's application procedure also includes an appellate process for those applicants who seek to challenge the agency's determination of their status. *See* 49 *C.F.R.* § 37.125(g).

Petitioner applied for Access Link service in March of 1994. Three disabilities were listed on his application: colitis, learning disability, and allergies. According to the application, the colitis inhibited his ability to walk long distances; the learning disability made it difficult for him to identify consistently his place of destination, and the allergies made it difficult to be outdoors for extended periods of time in the spring. According to the application, all of these conditions were permanent.

Also, according to the application, which was apparently filled out by someone at the Abilities Center, petitioner was able to ride NJT's regular buses and did so regularly on excursions to the Deptford Mall, the Echelon Mall, the Moorestown Mall, the Cherry Hill Mall, a friend's house in Cherry Hill, and Pennsauken. Petitioner requested Access Link service only for transportation to the Abilities Center in Westville. Petitioner's application was supported by a "medical verification," signed by his gastroenterol-

ogist, verifying his colitis and a "medical verification" signed by his family physician without other medical diagnostic information. Petitioner's mental retardation was verified by his prior receipt of services provided by the New Jersey Division of Developmental Disabilities.

After receiving petitioner's application, NJT conducted a site inspection, examining the route that petitioner would need to use in order to reach the regular bus stop that would provide transportation to the sheltered workshop. The site inspector concluded that the walking distance was too far and the route too dangerous for petitioner to use on a daily basis. On April 28, 1994, NJT informed petitioner that he was "conditionally eligible" to use the Access Link. The notification letter provided in part:

> You are eligible to use Access Link only for trips which involve a dangerous path of travel between the bus stop and your origin and our your [sic] destination. Such a path of travel might be walking along busy highway where no sidewalk is available. You have acknowledged in the eligibility application that you are able to use the transit bus on all your trips except the trip to the Abilities Center located in Westville, NJ.
>
> The official classification of your eligibility is Condition III eligibility, in situations involving a dangerous path of travel, therefore, you are eligible to use Access Link to travel to and from your home to the Abilities Center in Westville, New Jersey.

Petitioner's conditional eligibility was to expire on April 20, 1995.[1]

On August 30, 1995, petitioner filed a second application for Access Link services. In this application, petitioner's disability is listed as mental retardation/schizophrenic disorder. In this application, petitioner requested Access Link service five times a week to the Abilities Center as well as four additional trips per week for recreational and religious purposes. Petitioner was interviewed by someone at NJT, but he apparently gave the interviewer unresponsive answers and denied ever using regular bus services, an answer at variance with his initial application. Included with his second application was a psychological evaluation of petitioner

---

[1] The record on appeal does not explain with clarity the status of petitioner's use of the Access Link between April 20, 1995, and the date of a subsequent application for Access Link services on August 30, 1995.

prepared by a psychologist several years earlier. Although the psychologist recommended that petitioner be permitted to return to the sheltered workshop, the report also stated, in part:

> This referral sought a clinical opinion concerning the behaviors of this client as well as an assessment for psychiatric evaluation and the efficacy of counselling.... Gerry answered the examiner's questions is short terse responses. He was gaze-avoidant and his speech appeared very pressured.... There was a clear sense of ... some clear impairments in his ability to negotiate his world effectively.... After psychiatric evaluation Gerry was to contact me for a counseling appointment. This took several months—*Gerry was able to organize himself to take public transportation and arrive at our meeting on time*—he projects as a schizoid type with emotional blunting, no close relationships although unlike the schizoid, Gerry expresses a desire for friends and people to do things with although he lacks the social mechanics to actualize this.

Petitioner's application for Access Link was denied by NJT by letter dated September 22, 1995. That letter indicated:

> This denial is based on the following information you provided in your ADA paratransit application:
>
> 1) In your application you provided a professional report stating that you have successfully taken fixed route bus service 'independently in the past, thus demonstrating your ability to ride fixed route bus service. Although you may no longer be riding fixed route service, there is no indication in your application, as to why you can no longer take fixed route service.
>
> Therefore, we encourage you to use the accessible fixed route transit service and hope you will you will [sic] become a frequent passenger. To assist you in travelling with NJ TRANSIT please refer to the enclosed Accessible Services Guide. All Access Link passenger applications are reviewed by a panel of NJ TRANSIT staff. Each applicant's personal situation is discussed and weighed against the Federally mandated ADA paratransit eligibility guidelines.

Petitioner was officially informed on October 16, 1995, that he was no longer eligible for Access Link services. He immediately notified NJT that he was going to appeal that decision. Pending his appeal, he was permitted to use Access Link.

In preparation for the appeal, NJT conducted another site inspection of the route between petitioner's home and the regular bus stop that he would have to use to get to work. The "paratransit specialist" who conducted the inspection reported the following:

> 1. Mr. Sell lives in a modern trailer park with his residence being 0.5 mile from Blackhorse Pike.
>
> 2. Sidewalks are not provided inside the park but that is private property.

3. A field does exist along with a sign which reads: Private Property, No Trespassing. At this location a significant portion of the fence has been removed to gain access to Blackhorse Pike. Even if a person should walk around, it would only take a couple of minutes to go around.[2]

4. In meeting with Mr. Sell in person and monitoring his actions in order to maintain eligibility, Mr. Sell has displayed a high level of competence and common sense which would serve him well in using the bus system.

The appeal was conducted by David Rishel, director of the Office of Special Services for NJT. Petitioner appeared at the hearing with legal representation. Petitioner's appeal was denied in a decision dated December 26, 1995. The written decision provided, in part:

This denial is based on the following information you provided in your ADA paratransit application and during your appeal hearing:

1) On your original assessment (application) you indicated that you were a frequent user of NJ TRANSIT's regular fixed bus route bus service (riding the 400, 404, 403, 407, 409, 419, 455 and 457 routes).

2) On your second assessment (application) you indicated that you were not using the NJ TRANSIT fixed route bus service. However, during your hearing, you interjected that this was not correct. You said that you were still sometimes using regular fixed route bus service.

3) Although you discussed a number of disabilities which you felt restricted your use of the regular fixed route bus system, these disabilities have not prevented you from past frequent use of the bus system. Your main concern was the path of travel from your home to your bus stop.

4) During your hearing, you indicated that you felt that the path of travel from your home to the bus stop (on the Black Horse Pike) was excessively long and not accessible. You told us that a field which you had previously been able to walk across was now posted with no trespassing signs and that you now had to walk around the field to get to the bus stop. You and your Designated Representative indicated that the distance which now had to be traveled from your home to the bus stop was "about three miles."

5) We have evaluated the path of travel from your home to the bus stop. The distance to Black Horse Pike, measured along Harrison Avenue, is one half (½) mile. Although there are no sidewalks, the road is not highly traveled and does not represent a hazard to a walking pedestrian. Black Horse Pike has double wide shoulders (a full lane wide) and a grass median strip. In addition to this, there are frequently paths along the grass which parallels each side of the highway. All of these factors make it possible for a pedestrian to walk safely for a reasonable distance along a portion of the highway. Based on these facts, we can not [sic] find

---

[2] Handwritten here is a notation "0.5 miles." It is not clear from the record who wrote this.

evidence to support your assertion that you are faced with an unreasonable long or inaccessible path of travel from your home to the bus stop.

Petitioner now appeals this decision to this court.

I

We begin our analysis with full recognition that precedent dictates that we will not disturb an administrative decision that is supported by substantial credible evidence. *See Gerba v. Trustees of the Public Employees' Retirement Sys.*, 83 *N.J.* 174, 189, 416 *A.*2d 314 (1980); *Henry v. Rahway State Prison*, 81 *N.J.* 571, 579–80, 410 *A.*2d 686 (1980); *Atkinson v. Parsekian*, 37 *N.J.* 143, 149, 179 *A.*2d 732 (1962). Where we are satisfied that the evidence and the inferences to be drawn therefrom support the agency decision, we will affirm that decision even in those instances where we might have reached a different result. *See Clowes v. Terminix Int'l, Inc.*, 109 *N.J.* 575, 588, 538 *A.*2d 794 (1988) (citing, *inter alia, State v. Johnson*, 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964)).

The Supreme Court in *Henry, supra,* stated that "an appellate court will reverse the decision of the administrative agency only if it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." 81 *N.J.* at 579–80, 410 *A.*2d 686. Moreover, an agency's particular expertise is a factor that weighs in favor of giving deference to the administrative agency. *See Close v. Kordulak Bros.*, 44 *N.J.* 589, 599, 210 *A.*2d 753 (1965).

The regulations that arose under the Americans With Disabilities Act delineating those people for whom paratransit services must be offered are set out in 49 *C.F.R.* § 37.123(e), which provides, in part:

> (1) Any individual with a disability who is unable, as the result of a physical or mental impairment (including a vision impairment), and without the assistance of another individual (except the operator of a wheelchair lift or other boarding assistance device), to board, ride, or disembark from any vehicle on the system which is readily accessible to and usable [by] individuals with disabilities.
>
> . . . .

(3) Any individual with a disability who has a specific impairment-related condition which prevents such individual from traveling to a boarding location or from a disembarking location on such system.

(i) Only a specific impairment-related condition which prevents the individual from traveling to a boarding location or from a disembarking location is a basis for eligibility under this paragraph. A condition which makes traveling to boarding location or from a disembarking location more difficult for a person with a specific impairment-related condition than for an individual who does not have the condition, but does not prevent the travel, is not a basis for eligibility under this paragraph.

(ii) Architectural barriers not under the control of the public entity providing fixed route service and environmental barriers (e.g., distance, terrain, weather) do not, standing alone, form a basis for eligibility under this paragraph. The interaction of such barriers with an individual's specific impairment-related condition may form a basis for eligibility under this paragraph, if the effect is to prevent the individual from traveling to a boarding location or from a disembarking location.

[<em>Ibid.</em>]

The above are referred to as "Category I" and "Category III" eligibility requirements. Petitioner contends that he is eligible for paratransit services under either Category I or Category III.

█ NJT's determination that petitioner was not eligible for Access Link services was based on the following factual determinations:

1) Petitioner originally indicated, on his initial application, that he was a frequent user of NJT regular fixed bus route bus service (riding the 400, 404, 403, 407, 409, 419, 455 and 457 routes).

2) On petitioner's second application, he indicated that he was not using the NJT fixed route bus service. At the appeal hearing, however, he interjected that this was not correct. He said that he was still sometimes using regular fixed route bus service.

3) Although petitioner discussed a number of disabilities that he felt restricted his use of the regular fixed route bus system, these disabilities did not prevent petitioner in the past from making frequent use of the bus system. Petitioner's main concern was the path of travel from his home to the bus stop.

4) During the appellate hearing, petitioner indicated that he felt that the path of travel from his home to the bus stop (on the Black Horse Pike) was excessively long and not accessible. He told the NJT official that a field that he had previously been able to walk across was now posted with no trespassing signs and that he now had to walk around the field to get to the bus stop. Petitioner and his attorney indicated that the distance that had to be traveled from petitioner's home to the bus stop was "about three miles." NJT personnel evaluated the path of travel from petitioner's home to the bus stop. According to NJT, the distance to Black

Horse Pike, measured along Harrison Avenue, is one half (½) mile. Although there are no sidewalks, the road is not highly traveled and does not represent a hazard to a walking pedestrian. Black Horse Pike has double wide shoulders (a full lane wide) and a grass median strip. In addition to this, there are frequently paths along the grass which parallels each side of the highway. All of these factors make it possible for a pedestrian to walk safely for a reasonable distance along a portion of the highway. Based on these facts, NJT found no evidence to support petitioner's assertion he was faced with an unreasonably long or inaccessible path of travel from his home to the bus stop.

These are clearly factual determinations. The salient facts that led to the ultimate decision were that petitioner was capable of using the regular bus service and that the path to the bus stop was not unreasonably dangerous. There is support in the record for both of these determinations. We see no reason or basis to interfere with those conclusions of fact. *See Clowes, supra,* 109 *N.J.* at 588, 538 *A.*2d 794.

In order to qualify for paratransit services under Category I, petitioner must show that he is "unable, as a result of a ... mental impairment ... to ... ride ... any vehicle on the system which is readily accessible to and usable by individuals with disabilities." 49 *C.F.R.* § 37.123(e)(1). While petitioner made a showing in his initial application that he might have trouble riding the bus because he might not always recognize his stop, there is evidence that petitioner has successfully used the fixed bus routes on many occasions. With the evidence that petitioner has used the bus service in the past, NJT concluded that petitioner was able, despite his mental impairment, to utilize public transportation.

It would appear from the plain meaning of the regulation that it would be difficult for petitioner to make a strong case for eligibility under Category III. As both parties admit, however, travel to or from a bus stop need not be literally impossible in order for an applicant to qualify for eligibility. There is interpretive guidance in the *C.F.R.* for eligibility:

What the rule uses as an eligibility criterion is not just the existence of a specific impairment related condition. To be a basis for eligibility, the condition must prevent the individual from traveling to a boarding location or from a disembarking location....

....

> ... [A] case of "prevented travel" can be made not only where travel is literally impossible ... but also where the difficulties are so substantial that a reasonable person with the impairment-related condition in question would be deterred from making the trip.

[49 <em>C.F.R.</em> § 37.123, app. D.]

In order to qualify for Category III eligibility, petitioner must show that he "has a specific impairment-related condition which prevents [him] from traveling to a boarding location or from a disembarking location on such system." *Ibid.* When he was initially approved for conditional use of the Access Link, this was the category that permitted the initial conditional approval. It was determined at that time that petitioner's route to the bus stop was dangerous and distant.

A further site inspection by agency personnel prior to the appeal demonstrated that the expressed dangers were less severe than originally described and that the actual distance was less than the initial calculation. These determinations have ample support in the record.

II

On appeal, petitioner contends that the NJT administrative hearing should have been a contested case under New Jersey's Administrative Procedure Act, *N.J.S.A.* 52:14B-1 to -15.

This issue was not raised below, as evidenced by the fact that petitioner did not seek to have his case referred to the Office of Administrative Law for a hearing under the Administrative Procedure Act. *See N.J.A.C.* 1:1-1 to -21.6. We therefore decline to consider the contention fully on this appeal. *See Nieder v. Royal Indem. Ins. Co.,* 62 *N.J.* 229, 234, 300 *A.*2d 142 (1973).

We note, however, that, under *N.J.S.A.* 52:14B-2(b), a contested case is:

> [A] proceeding, including any licensing proceeding, in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are *required by constitutional right or by statute* to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing, but shall not include any

proceeding in the Division of Taxation, Department of the Treasury, which is reviewable de novo by the Tax Court.

[*Ibid.* (emphasis added).]

Under the plain meaning of the statute, there is no requirement that NJT's eligibility determination be treated as a contested case. The right is neither constitutionally mandated nor statutorily mandated. *See Limongelli v. New Jersey State Bd. of Dentistry,* 137 *N.J.* 317, 325, 645 *A.*2d 677 (1993) ("notice and an ALJ hearing are required under the APA only when a hearing is required under (1) the United States Constitution, (2) the New Jersey Constitution, or (3) another New Jersey Statute."); *High Horizons Dev. v. Department of Transp.,* 120 *N.J.* 40, 54, 575 *A.*2d 1360 (1990).

It is not required under the United States Constitution, the New Jersey Constitution, or any other New Jersey statute that an appeal from an eligibility decision be considered a contested case.

Affirmed.