Rockingham
No. 95-397

THE STATE OF NEW HAMPSHIRE

v.

DAVID PAULSEN

March 18, 1999

*Jeffrey R. Howard,* attorney general (*John P. Kacavas,* assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Offices,* of Chichester (*Mark L. Sisti* on the brief and orally), for the defendant.

BRODERICK, J. After a jury trial in Superior Court (*Gray,* J.), the defendant, David Paulsen, was convicted of two counts of aggravated felonious sexual assault, RSA 632-A:2, I(j)(2) (1996), and one count of endangering the welfare of a child, RSA 639:3, III (1996). We affirm in part, reverse in part, and remand for resentencing.

I

The following facts were adduced at trial. The victim was four years old when the defendant married her mother in 1982. Although her mother and the defendant separated in September 1993, the victim continued to live with the defendant through the beginning of 1994.

The first incident of sexual intercourse between the victim, then fourteen years old, and the defendant occurred in August or September 1992. The victim testified that this sexual relationship continued through the beginning of April 1994. She was fifteen years old when the final act of sexual intercourse occurred. In May 1994, the victim reported the abuse to Detective Adriane Ware of the Portsmouth Police Department, who conducted an investigation.

The defendant was subsequently indicted on four charges relating to the abuse. Two indictments charged him with aggravated felonious sexual assault, one charging the first act of sexual intercourse, the other charging the last. The other two indictments charged him with endangering the welfare of a child.

Prior to trial, the defendant unsuccessfully sought to dismiss the endangerment indictments, arguing that they were unconstitutionally duplicitous because they charged the offenses as courses of conduct rather than as single acts. The superior court dismissed one of the indictments *sua sponte* on the second day of trial. The defendant was subsequently convicted by a jury on the three remaining indictments.

On appeal, the defendant argues that the trial court erred in: (1) denying his motion to dismiss the surviving endangerment indictment; (2) denying his motion for a directed verdict of acquittal on the endangerment indictment; (3) addressing the admissibility of certain evidence in the presence of the jury; and (4) denying his motion for a new trial based on ineffective assistance of counsel.

## II

We first address the defendant's argument that the remaining endangerment indictment was unconstitutionally duplicitous because it charged the offense as a course of conduct rather than as a single act.

The indictment alleged that the defendant

> committed the crime of endangering the welfare of a child in that, he knowingly engaged in a continuous course of conduct involving acts of sexual intercourse with K.B., his less than 16 year old step-daughter.

Whether the endangerment indictment was duplicitous is a question of law, which we review *de novo, see Byblos Corp. v. Salem Farm Realty Trust,* 141 N.H. 726, 729, 692 A.2d 514, 516 (1997). Although the defendant's motion to dismiss raised both State and federal constitutional claims, on appeal the defendant relies solely on the New Hampshire Constitution. Thus, we address his State claim only. *Cf. State v. Turgeon,* 137 N.H. 544, 546, 630 A.2d 276, 277 (1993).

Duplicitous indictments are unconstitutional because they fail to ensure notice to the defendant, protect against double jeopardy, and assure the reliability of a unanimous jury verdict. *State v. Patch,* 135 N.H. 127, 128, 599 A.2d 1243, 1244 (1991). "An indictment is duplicitous when it charges two or more offenses in one count." *Id.* An indictment alleging a course of conduct is not duplicitous, however, if continuous acts or omissions may constitute the offense. *See State v. Rodney Portigue,* 125 N.H. 352, 360-61, 481 A.2d 534, 539-40 (1984). Thus, we must determine whether the endangerment count under RSA 639:3, III may be based on a course of conduct or whether the statute proscribes a single act. We first examine the plain language of the statute. *See Appeal of Soucy,* 139 N.H. 110, 116, 649 A.2d 60, 63 (1994).

RSA 639:3, III states that

> *the solicitation by any person of a child under the age of 16* to engage in sexual activity as defined by RSA 649-A:2, III for the purpose of creating a visual representation as defined in RSA 649-A:2, IV, or *to engage in sexual penetration as defined by RSA 632-A:1, V, constitutes endangering the welfare of such child.*

(Emphasis added.)

The first material element is "solicitation." While the State failed to allege "solicitation" in the indictment, the defendant made no claim below or on appeal that the charge was insufficient for failing to allege "solicitation." Thus, the defendant waived any objection to the sufficiency of the indictment. *See State v. Boetti*, 142 N.H. 255, 258, 699 A.2d 585, 587 (1997). In addressing the defendant's argument that the endangerment indictment was duplicitous, however, we consider all the elements of the offense, including "solicitation." *Cf. State v. Bergen*, 141 N.H. 61, 63-64, 677 A.2d 145, 147 (1996) (State must prove material elements of offense beyond a reasonable doubt).

While RSA 639:3, III uses the term "solicitation" in the singular, the term is not defined in RSA chapter 639. Therefore, the statute defining the crime of "solicitation" guides us. *See State v. Lucius*, 140 N.H. 60, 67, 663 A.2d 605, 610 (1995). RSA 629:2, I, provides that a person is guilty of criminal solicitation "if, with a purpose that another engage in conduct constituting a crime, he commands, solicits or requests such other person to engage in such conduct." RSA 629:2, I (1996). A single act of solicitation is sufficient to convict a person of the crime of "solicitation." *Cf. State v. Kilgus*, 128 N.H. 577, 583, 519 A.2d 231, 235 (1986).

The unlawful solicitation involved in this case would be the defendant's requests "to engage in sexual penetration as defined by RSA 632-A:1, V," which defines "sexual penetration" to include "sexual intercourse," the act alleged in the endangerment indictment. *See* RSA 632-A:1, V(a) (1996). Both RSA 639:3, III, the endangerment provision, and RSA 632-A:1, V, the sexual penetration provision, use the singular when referring to the unlawful act. Each act of sexual penetration would support a separate crime just as each act of sexual contact would support a separate crime. *Cf. Patch*, 135 N.H. at 128, 599 A.2d at 1244; *compare* RSA 632-A:3, II (1996) (felonious sexual assault based on sexual penetration) *with* RSA 632-A:3, III (1996) (felonious sexual assault based on sexual contact). Therefore, we interpret RSA 639:3, III as defining each act of soliciting a minor to engage in a single act of sexual penetration as a separate offense of endangering the welfare of the child. Accordingly, we conclude that prosecution under RSA 639:3, III does not permit charging a course of conduct. *See Patch*, 135 N.H. at 128-29, 599 A.2d at 1243-44 (indictment charging one count of felonious sexual assault under RSA 632-A:3, III based on "course of conduct involving several incidents of intentionally touching" was duplicitous because each act of sexual contact charged constituted separate offense of felonious sexual assault).

Relying on our decision in *Portigue*, the State argues that it may indict, as a continuous course of conduct, an offense which involves endangering the welfare of a child. The State, however, misapplies our holding in *Portigue*.

In *Portigue*, the defendant was convicted of one count of endangering the welfare of a child under RSA 639:3, I (1996),

> by purposely violating a duty of protection which he, the child's father, owed to [his daughter] in that he permitted [the mother] to engage in conduct which caused bodily injury to [his daughter]: to wit, [the mother] did intentionally beat [the daughter] ... during the period of March, 1981, to January 9, 1982, and thereby caused [the daughter's] death.

*Portigue*, 125 N.H. at 360, 481 A.2d at 539. The indictment was not duplicitous because the statute did not proscribe a particular act or omission, but rather proscribed the purposeful disregard by a parent of the duty of care, protection, or support owed to his or her child, which may involve a single act or omission, or continuous acts or omissions. *See id.* at 360-61, 481 A.2d at 539-40. Because the statute sets forth the material element of the offense as a violation of a "duty" rather than a specific act or omission, we reasoned that it was not necessary for the State to charge specific incidents of parental disregard. *See id.* By contrast, RSA 639:3, III does not proscribe a duty, but rather the "act" of soliciting a minor to engage in sexual penetration. Therefore, we hold that the State was bound to allege a specific act, rather than a course of conduct, when indicting the defendant under RSA 639:3, III.

By alleging a "continuous course of conduct involving acts of sexual intercourse" as a violation of RSA 639:3, III, the indictment at issue constituted more than one offense, and thus was duplicitous. *See Patch*, 135 N.H. at 129, 599 A.2d at 1244. As a result, the State failed to give the defendant fair notice of the specific incidents against which he had to defend. *See id.* at 128, 599 A.2d at 1244. Having concluded that the endangerment indictment failed to satisfy constitutional notice requirements, we need not address whether the indictment also presented double jeopardy and jury unanimity concerns. *See id.*

■ Accordingly, we hold that the trial court erred in denying the defendant's motion to dismiss the endangerment indictment. Because our determination on this issue is dispositive of the endangerment count, we need not address the defendant's motion for a

directed verdict of acquittal of this charge. *See id.* at 129, 599 A.2d at 1244.

## III

We next consider the defendant's argument that the trial court erred in addressing the admissibility of certain evidence in the presence and hearing of the jury. During the direct examination of Detective Ware, the following exchange occurred:

[STATE]: What did you do in terms of making out a charge in this arrest?

[DEFENSE]: Objection, Your Honor. This is not relevant.

THE COURT: How is it relevant?

[STATE]: What I'd like to do is get into the development of the time frames in the charges. In other words, this man has now been charged with a crime and part of that involves putting together the facts, putting together the many time frames. [Detective Ware] worked on putting together the time frame. I intend to question so the jury can understand exactly how the charges were derived.

THE COURT: What element does it go to?

[STATE]: It doesn't go to an element, obviously, because time is not an element but the charges do differentiate separate time frames and I intend to differentiate those and in addition, I think it goes beyond that and gets into places in the road and places in the town where it occurred.

[DEFENSE]: The jury knows how the charges came and what they are. We're here to decide what the — whether the charges are true or not.

THE COURT: I understand that. I understand that. I still am not sure how it's relevant. Explain that more.

[STATE]: Well, I need to differentiate between two Class A charges. They are differentiated

by time and by place, and this is a professional witness. I intend to have her go over how that is done by the police department, and she will testify — I assume, Your Honor, as well she will testify —

[DEFENSE]: Objection, Your Honor. The nature of this speaking objection is allowing him to put his case in front of the jury when it should be done at side bar.

THE COURT: Now, let me tell you something, [defense counsel], you and I have nothing to hide. I believe a jury can here [*sic*] an objection and if I say disregard it, that jury is going to disregard that. I have that faith in the jury system. We don't need to approach the bench every time an objection is made. It can be made right in front of the jury and that's the way I run my courtroom and all of — unless it's something that really needs a side bar —

[DEFENSE]: I understand.

THE COURT: — such as a point of law, can be made right in front of the jury. When I tell them to disregard that, they will do that. Now, that objection is sustained.

[DEFENSE]: Thank you.

■ The defendant first alleges that the trial court erred in failing to permit defense counsel to approach the bench when he objected to the State's questioning of the witness. Superior Court Rule 66(a) provides:

> When stating an objection, counsel will state only the basis of the objection (e.g., "leading," "non-responsive," or "hearsay"), provided, however, that *upon counsel's request*, counsel shall be permitted a reasonable opportunity to approach the bench to elaborate and present additional argument or grounds for the objection.

(Emphasis added.) Under Rule 66(a), objecting counsel must first ask to approach the bench before the court is required to permit a side bar. When defense counsel finally requested a side bar in this

case, the judge did not entertain further argument and sustained the defendant's objection, obviating counsel's need for a side bar. Accordingly, as counsel did not make a timely request to approach the bench, Rule 66(a) is not implicated. Cf. State v. Brown, 128 N.H. 606, 616-17, 517 A.2d 831, 838 (1986) (noting that trial court's refusal to allow defense attorney's request to approach the bench when arguing an admissibility objection contravenes Rule 66(a)).

The defendant next argues that the trial court's failure to curtail this "speaking objection" contravenes New Hampshire Rule of Evidence 103(d). Rule 103(d) states that "[i]n jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury." There is no mandatory requirement that evidentiary disputes be discussed outside the hearing of the jury. The use of the limiting language, "to the extent practicable," clearly provides the trial court with discretion to decide what information should be shielded from the jury in a particular case. See N.H. R. EV. 103(d) Reporter's Notes.

■ Whether the trial court abused its discretion is determined on a case-by-case basis provided that the objecting party has properly preserved the issue. As noted above, once defense counsel objected to the "speaking objection" and requested a side bar, the judge sustained his objection and did not permit further argument on that issue in front of the jury. Defense counsel not only engaged in the "speaking objection" himself, but also failed to timely request a side bar. Accordingly, we hold that he failed to preserve this issue for appellate review.

The defendant also contends that the judge's statements to the defense attorney were prejudicial. We need not address this argument, however, as the defendant made no objection below. See State v. Ross, 141 N.H. 397, 399, 685 A.2d 1234, 1235 (1996).

IV

We finally address the defendant's argument that the trial court erred in denying his motion for a new trial based upon ineffective assistance of counsel. Although the defendant's motion for a new trial raised both State and federal constitutional claims, on appeal the defendant relies solely on the New Hampshire Constitution, and therefore we so limit our analysis. Cf. Turgeon, 137 N.H. at 546, 630 A.2d at 277.

To prevail on his claim of ineffective assistance of counsel, the defendant must establish "first, that counsel's performance was

deficient, and second, that counsel's performance resulted in actual prejudice to the outcome of the defendant's case." *State v. Henderson*, 141 N.H. 615, 618, 689 A.2d 1336, 1339 (1997). In considering whether counsel's performance was deficient, "we start with the strong presumption that counsel's conduct falls within the limits of reasonable practice, bearing in mind the limitless variety of strategic and tactical decisions that counsel must make." *State v. Wisowaty*, 137 N.H. 298, 302, 627 A.2d 572, 574 (1993) (quotation omitted). In order to show prejudice, the defendant "must demonstrate that there is a reasonable probability that the result of the proceeding would have been different had he received competent legal representation." *Id.* (quotation omitted). We review this ineffective assistance claim first by deciding whether the alleged error by counsel prejudiced the defendant's case. *See id.* If the defendant cannot establish such prejudice, "we need not even decide whether counsel's performance fell below the standard of reasonable competence." *Id.* (quotation omitted).

The gravamen of the defendant's ineffective assistance claim is that counsel did not adequately inform him of his absolute right to testify in his own defense at trial. During the hearing on the motion for a new trial, however, the defendant admitted he knew "like every American knows" that he had the right to testify. He claims that he did not exercise this right because he understood that the attorney was supposed to "call the shots" in the case.

The defendant urges us to presume prejudice under the facts of this case. We will presume prejudice "if the defendant can show that the attorney entirely failed to subject the prosecution's case to meaningful adversarial testing." *State v. Anaya*, 134 N.H. 346, 352, 592 A.2d 1142, 1145 (1991) (quotation and brackets omitted). For example, in *Anaya*, we held that by admitting the defendant's guilt to a lesser-included charge over the defendant's objection, defense counsel "deprived [the defendant] of his right to have the jury decide his guilt, rendered meaningless his right to take the stand and proclaim his innocence, and eliminated the State's burden to prove [the defendant's] guilt of [the] offense beyond a reasonable doubt." *Id.* at 354, 592 A.2d at 1147. Here, the defendant was not so deprived. At trial, defense counsel pursued the theory that the victim lied about the allegations in an effort to continue her relationship with her boyfriend, of which she knew the defendant would not approve. We will not presume prejudice where, as here, the defendant has failed to show that his attorney "entirely failed to subject the prosecution's case to meaningful adversarial testing." *Anaya*, 134 N.H. at 352, 592 A.2d at 1145 (quotation and brackets

omitted). Accordingly, the defendant must demonstrate actual prejudice in order to establish a claim for ineffective assistance of counsel. *See Avery v. Cunningham, Warden,* 131 N.H. 138, 148, 551 A.2d 952, 958 (1988).

█ In determining whether the defendant has established actual prejudice, we examine the totality of the evidence before the jury. *See Wisowaty,* 137 N.H. at 308, 627 A.2d at 578. In addition to the victim's testimony, the State elicited incriminating testimony from Detective Ware, the defendant's stepson, and a third party witness, including evidence of admissions of guilt by the defendant. The trial court did not err in finding that, even if the defendant had testified at trial and denied the allegations, no reasonable probability exists that the result of the trial would have been different. As the defendant failed to show actual prejudice, the trial court properly denied his motion for a new trial.

Accordingly, we affirm the defendant's two convictions for aggravated felonious sexual assault and reverse his conviction for endangering the welfare of a child. We remand for resentencing because evidence of the unconstitutional endangerment conviction may have affected the sentences imposed.

*Affirmed in part; reversed in part; remanded.*

All concurred.